[Crim. No. 2588. Third Dist. Jan. 7, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. DEMPSEY CAMPBELL, Defendant and Appellant.

Hugh Snyder, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Roland K. Hall, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—Two questions are raised on this motion to recall the remittitur in the above entitled appeal. (1) Should *Douglas* v. *California,* 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811], be applied retroactively? (2) In view of the fact that the *Douglas* decision was filed March 18, 1963, and this petition was not filed until August 5, 1965, is it so untimely as to justify denial of relief? We answer the first question affirmatively, the second question in the negative, and recall the remittitur.

Re : *The Effect of the Douglas Decision.*

On June 29, 1954, Campbell, with a codefendant not before the court, was convicted of second degree burglary and conspiracy to commit burglary. An appeal was taken in propria persona. The conviction was affirmed. (*People* v. *Campbell* (1955) 132 Cal.App.2d 262 [281 P.2d 912].) The record on that appeal shows that after the opening brief of

defendant Campbell had been filed in pro. per. counsel on appeal was requested and denied by this court. Although the reason for such denial does not appear in the record, it is to be assumed that since petitioner was clearly indigent it was upon the basis of the rule, then applicable in California, under which an attorney was not appointed to represent a defendant when the court, examining the record, considered it was dealing with a no-merit appeal.[1]

In *Douglas* v. *California, supra,* it was held that an indigent appellant in a criminal appeal is entitled to court-appointed counsel. It was held there that a state may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. The reasoning of the majority opinion in *Douglas* (per Justice Douglas) may be taken from the following excerpt from the opinion (p. 814 of 9 L.Ed.2d) : ''In spite of California's forward treatment of indigents, under its present practice the type of an appeal a person is afforded in the District Court of Appeal hinges upon whether or not he can pay for the assistance of counsel. If he can the appellate court passes on the merits of his case only after having the full benefit of written briefs and oral argument by counsel. If he cannot the appellate court is forced to prejudge the merits before it can even determine whether counsel should be provided. At this state in the proceedings only the barren record speaks for the indigent, and, unless the printed pages show that an injustice has been committed, he is forced to go without a champion on appeal. Any real chance he may have had of showing that his appeal has hidden merit is deprived him when the court decides on an ex parte examination of the record that the assistance of counsel is not required.''

We still have to consider the question whether *Douglas* v. *California, supra,* must be given retroactive consideration. In two cases, *Smith* v. *Crouse,* 378 U.S. 584 [84 S.Ct. 1929, 12 L.Ed.2d 1039], and *Ruark* v. *Colorado,* 378 U.S. 585 [84

---

[1]That rule as recited in the *Douglas* opinion (on p. 813 of 9 L.Ed.2d) is as follows: ''. . . The District Court of Appeal was acting in accordance with a California rule of criminal procedure which provides that state appellate courts, upon request of an indigent for counsel, may make 'an independent investigation of the record and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. . . . After such investigation, appellate courts should appoint counsel if in their opinion it would be helpful to the defendant or the court, and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court.' . . .''

S.Ct. 1935, 12 L.Ed.2d 1042], the United States Supreme Court has, in per curiam decisions without discussion, apparently held that it must be. That effect would logically follow anyway as a matter of California law.

Our Supreme Court in *In re Sterling* (Nov. 1965) 63 Cal.2d 486 [47 Cal.Rptr. 205, 407 P.2d 5], held that habeas corpus was not available to attack a final judgment upon the ground of an illegal search and seizure—since the grounds of attack had been available to petitioner both at the trial and on appeal. But the decision in *Sterling* sets forth a test by which availability of collateral attack can be determined. The opinion (per Chief Justice Traynor) says (on p. 487): "[A]vailability of collateral attack to challenge violations of constitutional rights must be considered in light of the relevance of the violation to the correct determination of petitioner's guilt, the purpose of the constitutional principle involved, and the effect that granting the remedy would have on the administration of criminal justice."

Applying that test to the violation involved in the case at bench, the inevitability that *Douglas* should be retroactively applied seems apparent. The excerpt from *Douglas* quoted above and setting forth the court's reasoning demonstrates that there has been no "correct [or fair] determination of petitioner's guilt"—as the courts now recognize "fairness." The "purpose of the constitutional principle involved" is to insure justice for rich and poor alike. As regards the effect of the recall of the remittitur "on the administration of criminal justice" generally, the appeal will be decided on the same record as before—and if new rules evolved in the intervening 10 years have a bearing upon the ultimate outcome, a matter which cannot be predetermined, that fact should not outweigh the fundamental principles involved. (See also *In re Gaines* (Aug. 1965) 63 Cal.2d 234 [45 Cal.Rptr. 865, 404 P.2d 473], where our Supreme Court, in discussing the problems of retroactivity of newly propounded rules, compares the *Morse* and *Griffin* type violations (*People* v. *Morse*, 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33]; *Griffin* v. *California*, 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106]).)

*In re Lopez*, 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380], is authoritative. *Lopez* involved a collateral attack upon a final judgment where a denial of the right to counsel during interrogation *before* trial had occurred, i.e., it involved the *Escobedo-Dorado* rule designed to stamp out improper

police activity. Regarding such violations, the opinion in *Lopez* (per Justice Tobriner) states on pages 375-376: "[I]f that environment did produce the evil fruit of the coerced confession we may trust that the process of trial, despite the difficulties, disclosed it. We cannot say that the possibility of abuse in the past is such that the *voluntary* statement then elicited must now be exorcised."

But the *Lopez* opinion goes on to state (on p. 376) that the United States Supreme Court, without discussion, "has applied retroactively on collateral attack its decisions requiring procedural fairness at criminal proceedings that vindicated an indigent's right to counsel at trial and on appeal. . . ." *Smith* v. *Crouse, supra,* and *Ruark* v. *Colorado, supra,* are cited in support of that statement.

The court in *Sterling, supra,* (63 Cal.2d 486), in acknowledgment of its obligation to cause California criminal appellate procedure to conform to newly pronounced United States Supreme Court decisions on constitutional questions, says (on p. 488): "We fully recognize this state's obligation to afford every defendant a full and fair opportunity to secure an adjudication of all claimed deprivations of his constitutional rights. . . ."

Petitioner has not had that opportunity here, and the remedy he invokes is proper to afford it to him. In *Sterling, supra,* the delayed collateral attack on illegal search and seizure is expressly distinguished from collateral attack based upon denial of "The right to counsel" (citing *Gideon* v. *Wainwright,* 372 U.S. 335 [83 S. Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733]) and "the right to counsel on appeal" (citing *Douglas* v. *California,* 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811]). And in regard to such matters the court states (on p. 488): "California's trial and appellate procedure is fully adequate to meet the procedural requirements recommended by the United States Supreme Court for the adjudication of federal constitutional rights and to provide a record adequate for federal habeas corpus review."

The verity of that statement can only be fulfilled, as applied to the case at bench, by recall of the remittitur so an attorney can be appointed to represent petitioner, an attorney who will review the record and give this petitioner and this court (to quote from *Douglas* v. *California, supra*) "the full benefit of written briefs and oral argument by counsel."

Re : *The Contention that the Petition is Untimely*.

*Douglas* v. *California, supra,* was not the law when petitioner was tried and when his appeal was heard. Obviously, he was not then bound to know of the rights which that decision fixed for the first time. And since the basis of *Douglas* is that a defendant in a criminal case, deprived of the services of counsel skilled in the law, has been deprived of procedural due process, how can it logically be argued that due process becomes mollified if petitioner, still unlearned in the law, does not in some manner and from some source seasonably ascertain its nuances?

We are not discussing here a case where, as in *In re Lopez, supra,* 62 Cal.2d 368, a newly pronounced rule was given prospective application because the violation sought to be retroactively applied had at its root the deterrence of improper police conduct. We deal here with a case where the constitutional violation is relevant to an issue at the heart of which is the fundamental principle of due process—fairness of the proceedings and protection against the possibility that an accused may have been deprived of his liberty through lack of skilled representation on appeal.

The motion is granted, the remittitur is recalled, counsel will be appointed to represent petitioner and his appeal will be reheard.

Good, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.