[Crim. No. 10931. In Bank. Feb. 23, 1968.]

In re JAMES MITCHELL on Habeas Corpus.

James Mitchell, in pro. per., and Frank C. Wood, Jr., under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Edsel W. Haws, Roger E. Venturi and Daniel J. Kremer, Deputy Attorneys General, for Respondent.

SULLIVAN, J.—James Mitchell, presently an inmate of the California State Prison at Folsom, was convicted of second degree burglary in 1961. The judgment was affirmed by the Court of Appeal on November 7, 1962 (*People* v. *Mitchell* (1962) 209 Cal.App.2d 312 [26 Cal.Rptr. 89]), a petition for hearing was denied by this court, and certiorari was denied by the United States Supreme Court (*Mitchell* v. *California* (1963) 374 U.S. 845 [10 L.Ed.2d 1065, 83 S.Ct. 1902]). On

March 15, 1967, Mitchell filed in this court the instant petition for a writ of habeas corpus on the ground that he had been denied his constitutional right to counsel on appeal (see *Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814]).[1] We issued an order to show cause and appointed counsel for petitioner. In his return to the order to show cause, respondent Walter Dunbar, Director of the Department of Corrections, denied the basic claim of the petition and alleged in substance that petitioner had waived his right to counsel on appeal, that his request for counsel on appeal had been equivocal and untimely, and that his delay in making application for collateral relief was not justified.

After an initial hearing on pertinent legal issues, it became apparent that the determination of certain factual issues was necessary to our decision, and we appointed the Honorable Lewis Drucker, retired Judge of the Superior Court, County of Los Angeles, as referee of this court. Our order of reference instructed that evidence be taken and a determination made as to the following questions: (1) What, if any, advice or information did petitioner receive from any source either before or after sentence with respect to his right to have counsel appointed to represent him on appeal? (2) What, if any, request or requests did petitioner make for the appointment of counsel on appeal? (3) Did petitioner knowingly and intelli-

---

[1]The instant proceeding does not represent petitioner's first application for collateral relief subsequent to the *Douglas* decision. On June 30, 1965, a little over two years after *Douglas* was decided, petitioner in propria persona filed in the Superior Court of Sacramento County a petition for writ of habeas corpus which pointed out that counsel had not been assigned to represent him on appeal. This petition was denied. On August 4, 1965, he sought to raise the same issue in a petition for writ of habeas corpus directed to the Court of Appeal for the Third Appellate District. This petition was denied on August 11, 1965, without prejudice to the filing of a motion to recall the remittitur in the appropriate appellate jurisdiction. After filing on August 31, 1965, a further petition for writ of habeas corpus in this court upon other grounds, and unsuccessfully seeking certiorari upon denial of that petition, petitioner filed in the Court of Appeal for the Fourth Appellate District a motion to recall the remittitur on the ground that he had been denied his constitutional right to counsel on appeal. This petition was denied without opinion on May 20, 1966; a petition for hearing was denied by this court, and the United States Supreme Court denied certiorari (*Mitchell* v. *California* (1966) 385 U.S. 978 [17 L.Ed.2d 440, 87 S.Ct. 520]). Petitioner continued in his efforts to raise the issue, and late in 1966 petitions for habeas corpus relief were denied by the Superior Court of Sacramento County and the Court of Appeal for the Third Appellate District. The instant petition was, as noted above, filed in this court on March 15. 1967. (It appears that petitioner also sought habeas corpus relief on other grounds from the United States District Court for the Eastern District of California. Said petition was denied on March 21, 1967, and a certificate of probable cause was denied on April 13, 1967.)

gently waive his right to be represented by counsel on appeal and, if so, what is the factual basis of any such waiver?

At the hearing before the referee both oral and documentary evidence was presented, and the following facts emerged: At petitioner's trial in 1961 he was represented by Joseph Mazziotta, an attorney appointed by the court. After the verdict of guilty had been returned, Mr. Mazziotta argued a motion for new trial on petitioner's behalf, and upon denial of this motion petitioner was sentenced to state prison. Thereupon Mr. Mazziotta asked to be relieved as attorney of record, and upon the granting of that motion he stated for the record "that I now advise Mr. Mitchell, the defendant herein, that since he desires to take an appeal from these proceedings, or the judgment, the order denying the motion for a new trial. he must do so within 10 days from today." Mr. Mazziotta also testified before the referee that at the time of sentencing he advised petitioner privately as to what procedures the latter would have to undertake in order to have an attorney appointed to represent him on appeal. Mr. Mazziotta further testified, however, that petitioner was in "a withdrawn state" when this advice was given because "he wrote some copious notes about the trial, and I am certain that he didn't hear half of what I told him on occasions because of his preoccupation with the written matter that he had before him." Petitioner testified before the referee that Mr. Mazziotta did not speak to him after advising him for the record of the 10-day appeal period, and that Mr. Mazziotta at no time advised him of the procedures to be undertaken by him in order to have counsel appointed for his appeal.

On September 25, 1961, petitioner in propria persona filed timely notice of appeal from the judgment convicting him of second degree burglary.[2] Thereafter, and prior to filing his opening brief, he undertook extensive efforts to augment the record on appeal. These efforts included letters, motions, and even a petition for a writ of mandate,[3] but were largely unsuccessful. It was in the course of this attempt to secure additional records that petitioner received a letter from the clerk of the trial court which, after informing petitioner that his request for records had been denied, went on to state: "When an attorney has been appointed by the Appellate Court to act in

[2] Written in the margin of the notice was the following: "As you know—I represent myself."

[3] It appears that petitioner requested and was denied counsel in the mandate proceeding.

your behalf, these matters may then be presented to that Court, . . ." It was petitioner's testimony before the referee that this letter led him to believe an attorney would be appointed by the Court of Appeal, and that he proceeded to wait for such appointment to occur.

On May 17, 1962, petitioner filed his handwritten opening brief in propria persona. Thereafter he made application to be present and address the court at oral argument; this application was denied on July 5, 1962. On July 25, 1962, respondent's brief was filed and on August 21, 1962, petitioner filed his closing brief. The appeal was calendared for October 9, 1962, for oral argument. On October 8, one day prior to the scheduled hearing, petitioner for the first time made application for appointment of counsel on appeal; the application also requested that he be allowed to appear "in propria persona with Counsel at the said hearing of this case and Cause." The application was denied on the date of filing.[4] Judgment was affirmed on November 7, 1962.

After consideration of the above evidence the referee filed in this court his findings and report, making the following findings on the questions submitted to him: As to question number (1) "that the petitioner did not receive any advice or information from any source either before or after sentence with respect to his right to have counsel appointed to represent him on appeal"; as to question number (2) "that the petitioner made a request for appointment of counsel on appeal to the District Court of Appeal in which his case was then pending, on October 8, 1962"; and as to question number (3) "that the petitioner did not waive his right to be represented by counsel." The People have excepted to each of these findings.

■ The findings of the referee, although not binding upon this court, are entitled to great weight. (*In re Poe* (1966) 65 Cal.2d 25, 27 [51 Cal.Rptr. 896, 415 P.2d 784] ; *In re Jones* (1962) 57 Cal.2d 860, 864 [22 Cal.Rptr. 478, 372 P.2d 310] ; *In re Riddle* (1962) 57 Cal.2d 848, 853 [22 Cal.Rptr. 472, 372 P.2d 304].) After an independent review of the record we have concluded that the findings are fully supported by the

---

[4]The order denying appointment of counsel provided as follows: "The Justices of this court having made an investigation of the record in the above entitled cause, and having determined that it would not be helpful to the defendant or to the court to have counsel appointed on this appeal, the appellant's application for appointment of counsel is hereby denied." (See *People* v. *Hyde* (1958) 51 Cal.2d 152, 154 [331 P.2d 42].)

evidence, that they are a correct appraisal of the evidence, and that they should be adopted by us. Accordingly, we adopt them as the findings of this court.

 It is now settled that the right to counsel on appeal first enunciated in *Douglas* v. *California, supra,* 372 U.S. 353, is to be given fully retrospective application. (*Smith* v. *Crouse* (1964) 378 U.S. 584 [12 L.Ed.2d 1039, 84 S.Ct. 1929] (per curiam); *Ruark* v. *Colorado* (1964) 378 U.S. 585 [12 L.Ed.2d 1042, 84 S.Ct. 1935] (per curiam); *People* v. *Campbell* (1966) 239 Cal.App.2d 252, 253-255 [48 Cal.Rptr. 693]; see *In re Lopez* (1965) 62 Cal.2d 368, 376 [42 Cal.Rptr. 188, 398 P.2d 380].) In the light of the facts found by the referee and adopted by this court, we have no hesitancy in concluding that petitioner has been denied that right.

We reject without extensive comment respondent's contentions (a) that petitioner's request for counsel on appeal was equivocal and untimely, and (b) that there was no adequate justification for petitioner's delay in seeking collateral relief until two years after the *Douglas* decision (see fn. 1, *ante*).

 As to the first of these contentions we conclude that the application for counsel made by petitioner on October 8, 1962, was sufficient in content to apprise the appellate court of his desire for representation, and, further, that it was not so untimely that significant disruption of the court's business would have resulted if it had been granted. It is noteworthy that the application was denied *not* because it was untimely or would unreasonably delay the case but *solely* because appointment of counsel would not be helpful either to petitioner or to the court (see fn. 4, *ante*). As we have seen, *Douglas* interdicts any such ground of denial. In the light of all the circumstances of the case, we hold that the request was adequate to require appointment of counsel. As to the second contention, we hold that sufficient justification for petitioner's delay in seeking collateral relief is to be found in his ignorance of law and legal procedures. (See *People* v. *Campbell, supra,* 239 Cal.App.2d 252, 256.)

The writ is granted and the Court of Appeal for the Fourth Appellate District is ordered to recall its remittitur in *People* v. *Mitchell,* 4 Crim. 1710 (209 Cal.App.2d 312 [26 Cal.Rptr. 89]), to reinstate the appeal therein, and to appoint counsel to represent petitioner on such reinstated appeal.

Traynor, C. J., Peters, J., Tobriner, J., and Burke, J., concurred.

McCOMB, J.—I dissent. At the time of defendant's appeal, the matter of appointment of counsel on appeal for indigents was governed by the decision of this court in *People* v. *Hyde* (1958) 51 Cal.2d 152 [331 P.2d 42], where it was stated that, upon application of an indigent defendant for counsel on appeal, the justices of the appellate court should undertake an investigation of the record in order to determine whether such counsel would be "helpful to the defendant or the court," and, if it were concluded that no such benefit would accrue if counsel were appointed, should deny the application. (51 Cal. 2d 152, 154.)

In *Douglas* v. *California*, 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814] it was decided that the denial of counsel on appeal by means of such a procedure constituted an "invidious discrimination" in violation of the equal protection clause of the Fourteenth Amendment, for it required an indigent person to make a preliminary showing of merit without the aid of counsel before legal assistance on appeal would be afforded, whereas a person able to pay for counsel on appeal was not "forced to run this gantlet." (372 U.S. 353, 357 [9 L.Ed2d 811, 814].) The court emphasized as the basis of its decision its concern for fundamental equality of opportunity between rich and poor. Observing that the indigent who failed to survive the "gantlet" would necessarily be compelled to prosecute his appeal without the assistance of counsel, it concluded: "There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." (372 U.S. 353, 358 [9 L.Ed.2d 811, 815].)

The *Douglas* decision clearly establishes that an application for counsel to present the appeal of an indigent must not be denied if such action will result in an "invidious discrimination" between rich and poor. Further, the denial of an application is tainted by such discrimination when its sole basis is that of an investigation on the part of the appellate court of the nature contemplated in *People* v. *Hyde, supra,* 51 Cal.2d 152. However, the fact that such an investigation was undertaken in the instant case, as is reflected in the order of the

Court of Appeal (see fn. 4 of the majority opinion), does not compel us to withhold from our consideration other circumstances surrounding the application which might cause us to conclude that its denial did not result in "invidious discrimination" against defendant.

In the instant case, defendant, through his filing of substantial briefs, his initiation of proceedings to require augmentation of the record on appeal, and his request to appear personally at oral argument, manifested an intention to proceed with his appeal in propria persona. Apparently, defendant sought to modify his position in this regard, and to make application for appointment of counsel, only after his request to be personally present at the time of oral argument had been denied. This modification was not even then complete, for defendant persisted in his request that he be allowed a personal appearance. Finally, and most importantly, the application was made on the day immediately preceding that scheduled for oral argument. There was no request that the cause be continued for oral argument so that counsel could adequately review the record and prepare for the argument. In sum, it appears that defendant's application for appointment of counsel on appeal was little more than a request that counsel be appointed at the eleventh hour in order to make an oral presentation of the arguments presented by defendant's pro se briefs.

Applying to the instant case the rationale of *Douglas* v. *California, supra,* 372 U.S. 353, I am of the view that the denial of defendant's belated application for appointment of counsel did not violate any right secured to him by the equal protection clause. A comparison of the position of the indigent with that of the "rich" man does, of course, reveal differences. The defendant who can afford legal assistance but nevertheless proceeds in propria persona prior to oral argument, then seeks to be represented by retained counsel, will in all probability be allowed such representation, for the state certainly has no cognizable interest to be protected in such an instance. However, "as the United States Supreme Court pointed out in the *Douglas* case, absolute equality is not required; only 'invidious discrimination' denies equal protection." (*People* v. *Shipman* (1965) 62 Cal.2d 226, 232 [42 Cal.Rptr. 1, 397 P.2d 993].) The rich defendant seeking to substitute counsel on appeal at the last moment places no burden thereby upon the People or the courts—assuming, of course, that the motion for such substitution is not accompanied by a request for continuance of oral argument. Further, it is to be presumed that counsel

sought to be substituted in such circumstances is prepared in the premises. In the situation of the instant case, on the other hand, the granting of the request for appointment of counsel would produce one of two equally unsatisfactory results. Either the case would be argued at the scheduled date by counsel unprepared to make a presentation of the quality expected by his profession, or a continuance would have to be granted in order to allow adequate preparation. The first alternative is unthinkable; the second is clearly improper in view of the fact that the necessity for continuance derives wholly from the tardiness of defendant's application for legal assistance.

The initiative for the procurement of counsel on appeal rests equally upon the rich man and the poor man. The defendant able to afford counsel must affirmatively contact such counsel and arrange for representation; the defendant unable to afford counsel must affirmatively contact the appellate court so that counsel may be assigned. Similarly, a defendant wishing to have counsel speak for him on appeal—whether or not that defendant can afford to retain such counsel—has the responsibility of exercising his initiative in a timely way so that counsel can be prepared to make argument at the time set therefor. The defendant, rich or poor, who fails to discharge that responsibility, pays the price in terms of the quality with which his case is presented for appellate review.

From the foregoing, it appears that, applying the rationale of the *Douglas* case to the problem at hand, the Court of Appeal's denial of defendant's application for counsel on appeal did not result in a denial of equal protection of the laws.

For the foregoing reasons, I am of the view that the order to show cause should be discharged and the writ denied.