[S.F. No. 23382. Feb. 6, 1978.]

LEWIS LYNN HOLT, Petitioner, v.
TOM L. KELLY, as Sheriff, etc., Respondent.

**COUNSEL**

John F. Moulds III, under appointment by the Supreme Court, and Isenberg, Moulds, Samuel & Rodda for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James H. Wernicke, Eddie T. Keller and Carole Bartlett Hogan, Deputy Attorneys General, for Respondent.

OPINION

**MOSK, J.**—Petitioner Lewis Lynn Holt seeks the return of 32 items of property, or the value of such property, taken by respondent Trinity County Sheriff at the time of petitioner's arrest in January 1974.[1] In November 1974 he filed a petition for writ of mandate in the superior court, but a demurrer to the petition was sustained. Subsequently petitioner in propria persona sought a writ in this court. We transferred the proceeding to the Court of Appeal with directions to issue an alternative writ of mandate.

The Court of Appeal appointed counsel for petitioner and a referee to hear evidence and make findings on certain specified questions. The referee found that (1) all the property claimed by petitioner was taken from him by the sheriff's department; (2) it was petitioner's property; (3) no written inventory of the property was made and in fact the sheriff's office had no means of determining its ownership; (4) the property had a value of $500; and (5) none of the items was returned to petitioner.

Nevertheless the Court of Appeal denied relief. We granted a hearing to determine what compliance, if any, with the claim filing provisions of the Government Code is required of a person who seeks to recover his property held by a public entity.

I

The appointment of a special referee without consent of the parties is authorized "When it is necessary for the information of the court in a special proceeding." (Code Civ. Proc., § 639, subd. 4.) Since appellate courts are not equipped to take evidence, a reference is essential when the determination of controverted issues of fact becomes necessary in an original proceeding. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 484, p. 4439.)

In contrast to a general reference, which is permitted only by consent of the parties (Code Civ. Proc., §§ 638, subd. 1, 644), a special referee's findings are not binding, and are properly characterized as advisory only. (*Ellsworth* v. *Ellsworth* (1954) 42 Cal.2d 719, 722-723 [269 P.2d 3]; *Dynair Electronics, Inc.* v. *Video Cable, Inc.* (1976) 55 Cal.App.3d 11, 20 [127

---

[1]The property, itemized and valued by petitioner, allegedly consisted of a gold wedding ring, wristwatch, butane lighter, pocket knife, silver belt buckle, various items of fishing equipment, and a number of carpenter's hand tools.

Cal.Rptr. 268].) Nonetheless, "[w]hen the findings of a referee are based in substantial part on the credibility of witnesses, such findings, although not binding on this court, are entitled to great weight in view of the referee's unique opportunity to observe the demeanor of the witnesses when they testified." (*In re Rosoto* (1974) 10 Cal.3d 939, 946 [112 Cal.Rptr. 641, 519 P.2d 1065]; see also *People* v. *Acosta* (1969) 71 Cal.2d 683, 687 [78 Cal.Rptr. 864, 456 P.2d 136].)

■   We have made an independent review of the record and have determined the findings are supported by and correctly interpret the evidence. (*In re Mitchell* (1968) 68 Cal.2d 258, 262-263 [65 Cal.Rptr. 897, 437 P.2d 289]; *In re Thornton* (1966) 64 Cal.2d 484, 485 [50 Cal.Rptr. 556, 413 P.2d 156]; *In re Allen* (1956) 47 Cal.2d 55, 57 [301 P.2d 577].)

Petitioner was arrested in McKinleyville, Humboldt County, on January 9, 1974. The arresting officer, Trinity County Sheriff's Deputy Donald Osborne, testified that he took petitioner to a motel to pick up a footlocker trunk. The trunk was placed in the patrol car, and Osborne then delivered petitioner to the Humboldt County jail for overnight detention. He did not give petitioner a receipt for the trunk or its contents.[2]

The next day Osborne delivered petitioner and the trunk to the Trinity County jail. The booking officer, Carl Beach, filled out by typewriter a "Trinity County Jail Arrest Record" form in triplicate. In a space at the bottom of the form designated "Property Receipt," he typed, "No money; one billfold and contents; one wristwatch, Whit [*sic*] metal, Times [*sic*], Plastic type band; One pair fingernail clippers, two keys on a key ring." Hand-printed beneath this appears, "1-Ft. Locker—Contents—(Clothes—tools, hand tools, & Rifles) C.B." The word "Rifles" is crossed out but readable, and the initials C.B. presumably refer to Carl Beach. The two carbon copies do not fully correspond with the original, thus indicating that some of the material on the original was added after the three were separated. In any event, none of these documents was given to petitioner, nor was he given any other form of receipt. No inventory was ever made of the contents of the trunk.

---

[2]Penal Code section 4003 provides: "Whenever any weapon or other personal property is taken from an arrested person, it shall be the duty of the desk clerk or other proper officer of any city, county or city and county jail, to which such person is committed for detention, to give a receipt to such person without delay for the property taken."

The testimony and declarations of the several deputies were confusing and conflicting.[3] In contrast, petitioner gave specific testimony as to the description, value, and place and date of acquisition of each of the items claimed. He testified that he was a member of the carpenters' union, and that he used the tools in his trade. The vague testimony of the officers is clearly outweighed by petitioner's detailed and specific evidence. This is precisely the circumstance that could be avoided by compliance with the requirement for a receipt contained in Penal Code section 4003; by failing to give an accurate receipt, the sheriff's department rendered itself virtually defenseless against this claim.

## II

Our analysis of the evidence leads us to adopt the referee's findings as our own. We now determine the legal consequences of these findings. Petitioner seeks to recover either the property or its value by means of a writ of mandate. The availability of the mandamus remedy is governed by section 1085 of the Code of Civil Procedure, which provides in relevant part that the writ may issue "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station." Since respondent is under a duty to return the claimed property to petitioner (Gov. Code, § 26640), a writ of mandate is appropriate to compel its return. (*Minsky v City of Los Angeles* (1974) 11 Cal.3d 113, 123 [113 Cal.Rptr. 102, 520 P.2d 726].)

Respondent's insistence that petitioner must comply with the claim filing provisions of the Government Code[4] is untenable in light of our opinion in *Minsky*. There a unanimous court held the claims statutes inapplicable to an action by an arrestee for the return of property taken by local police officers at the time of arrest and wrongfully withheld following disposition of the criminal charges. (*Id.* at pp. 123-124.) We reasoned that the provisions applied only to claims for money or

---

[3]Officer Beach stated in a declaration that the property taken from petitioner included various items of fishing equipment and tools. He added that most of these items were "apparently . . . misplaced" the next day. "Misplacing" property in the Trinity County jail apparently occurred in other, unrelated instances. The grand jury criticized the sheriff for "laxity in accounting for items of property obtained from prisoners or during the course of investigation," citing two specific examples. (Rep. of Trinity County Grand Jury for 1975-1976, p. 15.)

[4]Sections 911.2 and 950.2 provide that a damages action for injury to property (defined by § 810.8 to include loss thereof) is barred unless a claim is presented to the public entity employing the respondent within 100 days after the accrual of the cause of action.

damages and not to such forms of relief as the specific recovery of property. In addition we expressed the view that "even if the [property] taken from [an] arrestee . . . is no longer traceable to any property presently in defendant's possession and thus is not strictly available for specific recovery, we believe that plaintiff's cause of action would not be foreclosed by the claims statutes. . . . [A]fter a local governmental entity wrongfully withholds an arrestee's property, the arrestee clearly can seek specific recovery of the property while it is still in the possession of the local entity without being limited to the relatively short period for filing claims set forth in the claims statutes. This initial exemption of the action from the claims statute is not lost simply because the city takes the further wrongful step of disposing of the bailed property. The city cannot be permitted to invoke the claims statute, originally not available to it, by virtue of a later wrongful dissipation of the property. To so hold would be in effect to allow the local entity to profit by its own wrong, penalizing a plaintiff who, in light of the specific recovery remedy apparently available to him, justifiably did not file a claim." (*Id.*, at pp. 121-122, fn. 14.)

For the foregoing reasons we hold that an arrestee who seeks in good faith to specifically recover property taken from him at the time of his arrest is exempt from the claim filing provisions of the Government Code, even though some or all of the property may have been dissipated and respondent may be compelled to respond in damages in lieu of property.[5] The policy of providing prompt notice of claims to governmental entities which underlies the claims statute (*Minsky, supra,* at p. 123) has been fully effectuated here by petitioner's prolonged and good faith pursuit of a mandamus remedy. Respondent may not convert his wrongful dissipation of the property into an advantage by using it to support an essentially dilatory defense based on failure to comply with the claims statutes.

---

[5]Respondent contends that since some or all of the property is now unavailable he is responsible only by means of a proper claim for money damages and not in mandamus. This position is without merit, especially in light of the fact that any property now missing is the result of respondent's own misconduct. We have heretofore held that mandamus may be brought to start the chain of action designed to compel a ministerial duty by a public officer, even if the ultimate goal may be recovery of a sum of money. (*Flora Crane Service, Inc.* v. *Ross* (1964) 61 Cal.2d 199, 206-207 [37 Cal.Rptr. 425, 390 P.2d 193]; *Scannell* v. *Murphy* (1947) 82 Cal.App.2d 844, 850 [187 P.2d 790].) It is also clear that mandamus will lie where the recovery of money is merely ancillary to an underlying proceeding which seeks performance of a ministerial duty. (*Daugherty* v. *Board of Trustees* (1952) 111 Cal.App.2d 519 [244 P.2d 950]; *Reed* v. *Board of Education* (1934) 139 Cal.App. 661 [34 P.2d 758].)

Let a writ of mandate issue directing respondent to return to petitioner the property found by the referee to have been withheld from him, and if respondent is unable to do so, to deliver to petitioner the value thereof, i.e., the sum of $500. Petitioner shall recover from respondent his costs in this proceeding.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.