Opinion
 

 DOSSEE, J.
 

 We have consolidated two appeals arising from the same child custody dispute. The first appeal comes to us after the trial court denied the mother’s motion to modify the existing child custody order to enable her to relocate to Rhode Island with the child. We remand the matter to the trial court for reconsideration in light of
 
 In re Marriage of Burgess
 
 (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473].
 

 In the second appeal the question is whether the trial court erred in referring to a special master issues pertaining to implementation of the custody orders. We conclude the issues were not proper ones for reference in the absence of the parties’ consent, and we reverse the order.
 

 Facts
 

 Paula Ruisi and Charles (Kip) Thieriot were divorced in 1984. (Hereafter, we will refer to the parties as Paula and Kip, the designations used by the
 
 *1201
 
 parties themselves in their briefs.) They are the parents of one child, Rhys, bom in 1985.
 

 In 1986 the parties entered into a parenting agreement, which was incorporated into a judgment within the paternity action. The agreement provided for joint legal custody and for “shared physical parenting” as follows: Rhys’s primary care was to be provided by Paula, but Kip was to care for him on Mondays (from 3:30 to 7 p.m.), Thursdays (from 1 to 7 p.m.) and Saturdays (all day). Over the years, by agreement, Kip’s time with Rhys was increased so that Rhys was spending time each weekend with Kip.
 

 In September 1993, Paula moved (within the paternity action) to modify the existing custody and visitation arrangements to permit her to relocate to Rhode Island with Rhys.
 
 [1]
 
 She also sought sole legal custody on the ground that she and Kip had been unable over the years to agree on parenting decisions, and the conflict between them was harming the child.
 

 Kip opposed the motion, urging the court to deny Paula permission to move, to maintain joint legal and shared physical custody, and to alter the physical custody arrangements so as to increase his time with Rhys.
 

 By stipulation, the trial court appointed Dr. Margaret Lee, a psychologist, as an expert witness. Dr. Lee recommended that no changes be made in Rhys’s residence and that joint custody be continued. Dr. Lee concluded that the proposed move to Rhode Island or even to Sonoma County would hurt Rhys’s development due to the loss and change he would experience.
 

 At the conclusion of the contested hearing, the trial court denied Paula’s request to modify custody. The court found that Paula had failed to prove that a move to Rhode Island was necessary. Further, the court found no reason to change from joint to sole legal custody. The court found that both parents were making great efforts to keep Rhys from being caught in their conflicts and that both make significant, though different contributions to Rhys’s well-being. On August 10, 1995, the trial court confirmed its tentative decision as its final decision. Paula filed a timely notice of appeal.
 

 In its ruling, the trial court left open the question of a modified parenting schedule, leaving it to the parties to resolve by agreement. When the parties were unable to agree, the court issued an order on April 8, 1996, which
 
 *1202
 
 established a new schedule for Rhys.
 
 [2]
 
 Paula has asked that her notice of appeal be deemed to apply to that order as well.
 

 Discussion
 

 I.
 
 Change of Custody
 

 During the pendency of the appeal, the Supreme Court issued its decision in
 
 In re Marriage of Burgess, supra,
 
 13 Cal.4th 25, in which the Supreme Court examined the standards to be applied when a parent who has sole physical custody under an existing custody order seeks to move away, to change the residence of herself and the child. First, the court held that the parent seeking to relocate bears no burden of demonstrating that the move is necessary.
 
 (Id.
 
 at pp. 29, 34-37.) In so holding, the court disapproved a series of Court of Appeal cases which had required proof that the relocation is “ ‘essential and expedient,’ ” “ ‘for an imperative reason,’ ” or at least “ ‘necessary to the custodial parent.’ ”
 
 (Id.
 
 at pp. 38-39, fn. 10.)
 

 In the present case, the trial court applied that now-discarded rule. The trial court concluded that Paula had failed to establish that her move was necessary. In so ruling, the trial court relied on
 
 In re Marriage of Selzer
 
 (1994) 29 Cal.App.4th 637 [34 Cal.Rptr.2d 824], a case expressly disapproved on this point in
 
 Burgess.
 
 (13 Cal.4th at pp. 38-39, fn. 10.) A remand is therefore necessary for reconsideration of the appropriate standards set forth in
 
 Burgess.
 

 The
 
 Burgess
 
 court further clarified that when the custodial parent decides to relocate with the minor child, the burden lies with the
 
 noncustodial
 
 parent to persuade the court that a
 
 change
 
 in custody is in the child’s best interest. (13 Cal.4th at p. 37.) And the standard of proof is the same as in any other matter involving changed circumstances. (See also
 
 Brody
 
 v.
 
 Kroll
 
 (1996) 45 Cal.App.4th 1732, 1735-1736 [53 Cal.Rptr.2d 280] [“A move by a custodial parent constitutes a significant change of circumstances which may justify a transfer of custody to the noncustodial parent.”].) That is, the existing custody arrangement should be preserved unless a change in custody is “essential or expedient for the welfare of the child.”
 
 (In re Marriage of Burgess, supra,
 
 13 Cal.4th at p. 38.) The
 
 Burgess
 
 court explained: “The showing required is substantial. ... In a ‘move away’ case, a change of
 
 *1203
 
 custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it ‘essential or expedient for the welfare of the child that there be a change.’ ”
 
 (Ibid.,
 
 quoting from
 
 In re Marriage of Carney
 
 (1979) 24 Cal.3d 725, 730 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028].)
 
 [3]
 

 In the present case, at the request of the trial court, the parties’ arguments to the trial court were directed to the question whether Paula’s move to Rhode Island was necessary for Paula or best for Rhys. The court-appointed expert, Dr. Lee, recommended that Paula not be permitted to move; hence, Dr. Lee made no recommendations for custody or visitation
 
 if
 
 Paula moved. Her focus was on the value of preserving the status quo. Understandably, then, the trial court construed the issue before it as whether Paula should be
 
 permitted
 
 to move.
 

 Yet, the
 
 Burgess
 
 decision makes clear that that issue is not a proper one. The custodial parent cannot be prevented from moving with her child.
 
 (Brody
 
 v.
 
 Kroll, supra,
 
 45 Cal.App.4th at p. 1736;
 
 In re Marriage of Fingert
 
 (1990) 221 Cal.App.3d 1575 [271 Cal.Rptr. 389].) Family Code section 7501 declares: “A parent entitled to the custody of a child has a right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child.” In accordance with that presumptive right of the custodial parent, the
 
 Burgess
 
 court identified the “dispositive issue” as whether on account of a relocation by the custodial parent a change of custody to the other parent is essential for the welfare of the child.
 
 (In re Marriage of Burgess, supra,
 
 13 Cal.4th at p. 38.)
 

 The trial court failed to reach that question. Although the court did remark that the move would be detrimental to Rhys, the court did not consider whether custody should be changed as a result. The court concluded only that because the move would disrupt Rhys’s contact with Kip, the move was not justified. In fact, Kip did not even seek a change in Rhys’s primary care.
 
 [4]
 
 We therefore again conclude a remand is required to enable the parties to frame their positions in light of
 
 Burgess.
 

 As noted above, the
 
 Burgess
 
 case concerned the standards to be applied when the parent with
 
 sole physical custody
 
 seeks to relocate. (13
 
 *1204
 
 Cal.4th at p. 37.) In a footnote, the court observed that a different analysis may be required when the parents share
 
 joint physical custody
 
 under an existing order and one parent seeks to relocate with the child. In such a case, the change of circumstances rule does not apply. “The trial court must determine de novo what arrangement for primary custody is in the best interest of the minor [child]."
 
 (Id.
 
 at p. 40, fn. 12; accord,
 
 Brody
 
 v.
 
 Kroll, supra,
 
 45 Cal.App.4th at p. 1736.)
 

 This aspect of the
 
 Burgess
 
 decision is consistent with the earlier decision in
 
 In re Marriage of Birnbaum
 
 (1989) 211 Cal.App.3d 1508, 1513 [260 Cal.Rptr. 210], in which the court reasoned that when the parents have joint physical custody, modification of the coparenting arrangements is not a change of custody requiring change of circumstances. Instead, the trial court has wide discretion to choose a parenting plan that is in the best interest of the child.
 
 (Id.
 
 at p. 1518.)
 

 Here, Kip contends that under the 1986 parenting agreement, he and Paula had joint physical custody as well as joint legal custody. Accordingly, Kip argues that the trial court’s decision should be affirmed, as the court did examine what was in the best interest of Rhys and found that the parties should have joint custody. We reject the argument.
 

 The trial court’s decision did not comport with the standards enunciated in
 
 Burgess.
 
 In determining custody de novo, the trial court must look to
 
 all
 
 the relevant circumstances which bear upon the “best interest” of the child, and in so doing must take into account the presumptive right of a custodial parent to change the residence of the child so long as the removal will not prejudice the child’s rights or welfare. (Fam. Code, § 7501;
 
 In re Marriage of Burgess, supra,
 
 13 Cal.4th at pp. 31-32.) Thus the trial court may properly consider any effects upon the child’s welfare of one parent’s immediate or eventual relocation, including the extent to which the child’s contact with the noncustodial parent will be impaired by relocating. (13 Cal.4th at pp. 32, 36.) However, the court is not restricted to any particular formula for contact or visitation, nor is the court required to preserve the status quo.
 
 (Id.
 
 at p. 36.)
 

 Here, the trial court’s examination of the best interest of Rhys was limited to an examination whether Rhys’s contact with Kip would be impaired by Paula’s move. The court found the move would have an adverse effect on the established patterns of visitation between Rhys and his father. However, the court did observe that Kip unquestionably could afford to establish a third home in Rhode Island if he chose to do so. He has no employment commitments that force him to be in San Francisco regularly.
 

 The trial court did not address the question who should have primary physical custody when Paula moves. In fact, as noted in footnote 4,
 
 ante,
 
 Kip
 
 *1205
 
 requested only alterations in his parenting schedule; he did not seek modification of the existing “shared parenting” arrangement. The trial court concluded only that the existing custody arrangement should be continued and Paula should not be permitted to change Rhys’s residence to Rhode Island.
 

 Moreover, contrary to Kip’s assertion, it is not altogether clear that under the 1986 agreement Kip and Paula truly shared
 
 joint
 
 physical custody. Paula contends to the contrary that she has always been the parent with primary physical custody. Indeed, the 1986 parenting agreement provides for joint legal custody but only “shared [not joint] physical parenting” with the primary care by Paula and limited visits by Kip. The “primary caretaker,” however, is not necessarily equivalent to the parent with sole physical custody.
 
 [5]
 

 (Brody
 
 v.
 
 Kroll, supra,
 
 45 Cal.App.4th at pp. 1736-1737.)
 

 This confusion over the 1986 agreement is now immaterial. Under the subsequent custody order, filed April 8, 1996, the parties are expressly declared to have “joint legal and physical custody.” Yet, in that order the trial court took no account of a relocation by Paula. Instead, the trial court created a custodial schedule that cannot be effectuated if Paula moves to Rhode Island but Kip does not.
 

 In summary, we remand the matter to the trial court for reconsideration in light of
 
 Burgess
 
 and for a de novo determination of the custody and visitation arrangements upon Paula’s move to Rhode Island.
 

 In closing, we add a word concerning Kip’s argument that Paula was “testing the waters” and is not entitled to an advisory opinion on what custody order would be issued should she decide to move. The
 
 Burgess
 
 court alluded to this issue in a footnote: “The father argues that most custodial parents seeking to relocate are merely ‘bluffing’; they will not move if it will result in loss of custody. Even assuming his assumption is sound, the Family Code provides no ground for permitting the trial court to test parental attachments or to risk detriment to the ‘best interest’ of the minor children, on that basis. Nor should either parent be confronted with Solomonic choices over custody of minor children.” (13 Cal.4th at p. 36, fn. 7.)
 

 We construe this language within the full context of the
 
 Burgess
 
 opinion to mean that when the trial court is faced with a request to modify the existing custody arrangement on account of a parent’s plan to move
 
 *1206
 
 away (unless the trial court finds the decision to relocate is in bad faith), the trial court must treat the plan as a serious one and must decide the custody issues based upon that premise. The question for the trial court is not whether the parent may be
 
 permitted
 
 to move; the question is what arrangement for custody should be made.
 
 [6]
 
 (See also
 
 Brody
 
 v.
 
 Kroll, supra,
 
 45 Cal.App.4th at p. 1736.) That an order modifying custody may be conditional upon the relocation of a parent does not render the decision an advisory opinion.
 

 II.
 
 Appointment of Special Master
 

 A.
 
 Background
 

 Dr. Lee, the court-appointed evaluator, recommended in her report to the trial court on the question whether Paula should be permitted to move to Rhode Island, that a special master be used in this case to assist in communications between Paula and Kip and to facilitate joint parenting decisions.
 
 [7]
 
 Kip agreed, but Paula objected to the appointment of a special master. Her concern was that the special master would add another layer of litigation, requiring her to incur more attorney fees and thereby favoring Kip, the wealthier party. She also believed a special master would actually impair communication by allowing Kip to avoid communicating with her. Paula did agree that assistance of a mediator could help her and Kip improve their ability to make joint parenting decisions.
 

 In its ruling on August 10,1995, the trial court denied Paula permission to move, but left open various pending issues, including modifications to the parenting schedule and the use of a special master. Later, however, on January 24, 1996, the trial court issued an order appointing a special master to “hear and consider any and all issues regarding custody.”
 
 [8]
 
 Paula appeals from that order.
 

 
 *1207
 
 Thereafter, the parties selected Dr. Milton Schaefer, a psychotherapist, as special master. However, Dr. Schaefer was unwilling to comply with a provision in the court’s order requiring that all sessions be transcribed if requested by a party. Accordingly, on May 10,1996, the trial court met with the parties and counsel and on its own motion amended its order to eliminate the requirement that the proceedings be reported. Paula has asked that her notice of appeal be deemed to extend to this order as well.
 

 At the hearing on May 10, two parenting disputes were also presented to the court. The first concerned which therapist should be appointed for Rhys. This issue had been raised at the trial on Paula’s motion for modification of custody and had been deferred by the trial court. At the May 10 proceeding, the trial court again deferred decision on this issue until after an evaluation by Dr. Lee.
 

 The second issue involved the summer schedule for Rhys. Under the parenting schedule set forth in the court’s order of April 8, 1996, Paula was to have care of Rhys for a six-week bloc of time during which she would take him to Rhode Island. Kip was to have two blocs of two weeks and four weeks beforehand and afterward. After the court’s order was filed, however, Kip asked that he be allowed to visit Rhys in Rhode Island on one weekend. Paula objected that the court-ordered parenting schedule allowed her a full six-week bloc, and she had already made plans for all six weekends. The trial court decided to refer that issue to the special master.
 

 B.
 
 The Trial Court’s Authority
 

 In family law matters, especially where the parties are unable to curb their animosity toward each other, the trial court may well find it advantageous to designate a separate forum to resolve the parties’ differences.
 
 (In re Marriage of Olson
 
 (1993) 14 Cal.App.4th 1, 5, fn. 2, 8 [17 Cal.Rptr.2d 480].) However, the authority of the trial court to do so is constrained by the basic constitutional principle that judicial power may not be delegated.
 
 [9]
 
 (Cal. Const., art. VI, § 1;
 
 In re Marriage of Olson, supra,
 
 14 Cal.App.4th at p. 7 [appointment of accountant as special master to determine parties’ income and to calculate spousal support month-by-month was an improper delegation of judicial authority].)
 

 
 *1208
 
 The trial court has no authority to assign matters to a referee or special master for decision without explicit statutory authorization.
 
 [10]
 

 (Aetna Life Ins. Co.
 
 v.
 
 Superior Court
 
 (1986) 182 Cal.App.3d 431, 435 [227 Cal.Rptr. 460];
 
 In re Marriage of Galis
 
 (1983) 149 Cal.App.3d 147,150 [196 Cal.Rptr. 659];
 
 Bird
 
 v.
 
 Superior Court
 
 (1980) 112 Cal.App.3d 595, 599 [169 Cal.Rptr. 530].) An invalid reference constitutes jurisdictional error which cannot be waived.
 
 (International Jet Ski Boating Assn., Inc.
 
 v.
 
 Superior Court
 
 (1991) 232 Cal.App.3d 112, 116 [283 Cal.Rptr. 33];
 
 Aetna Life Ins. Co.
 
 v.
 
 Superior Court, supra,
 
 182 Cal.App.3d at pp. 436-437.)
 

 1.
 
 Powers of a Referee or Special Master
 

 [11]
 

 The Code of Civil Procedure
 
 [12]
 
 provides for two types of reference. A “general” reference is conducted pursuant to section 638, subdivision 1: the referee is empowered to make a conclusive determination without further action by the court. (§ 644.) In order to comport with the constitutional prohibition against delegation of judicial power, a general reference requires consent of the parties. (§ 638;
 
 Aetna Life Ins. Co.
 
 v.
 
 Superior Court, supra,
 
 182 Cal.App.3d at p. 436.) “[I]f the reference is by agreement of the parties, the parties can stipulate to the special master making determinations which otherwise would be an unlawful delegation of judicial authority.”
 
 (In re Marriage of Olson, supra,
 
 14 Cal.App.4th at p. 8.)
 

 A “special” reference is one conducted pursuant to section 639 or subdivision 2 of section 638, in which the referee makes advisory findings which do not become binding unless adopted by the court.
 
 (Holt
 
 v.
 
 Kelly
 
 (1978) 20 Cal.3d 560, 562 [143 Cal.Rptr. 625, 574 P.2d 441];
 
 Bird
 
 v.
 
 Superior Court, supra,
 
 112 Cal.App.3d at pp. 599-600.) The trial court must independently consider the referee’s findings before acting.
 
 (Bird
 
 v.
 
 Superior Court, supra,
 
 112 Cal.App.3d at p. 600; see
 
 Marathon Nat. Bank
 
 v.
 
 Superior Court
 
 (1993) 19 Cal.App.4th 1256, 1261 [24 Cal.Rptr.2d 40].) But the referee’s recommendations are entitled to great weight.
 
 (Holt
 
 v.
 
 Kelly, supra,
 
 20 Cal.3d at p. 563.)
 

 
 *1209
 
 Here, Paula contends the reference to the special master was a general reference, invalid because she did not give her consent. Kip argues, on the other hand, that the reference was a special reference.
 

 Paula’s characterization is supported by the introductory paragraph of the trial court’s order, which directs the special master “to hear
 
 and determine
 
 all disputes related to the interpretation or enforcement [of the custody orders].” Yet, the subsequent paragraphs clarify that the special master shall “hear
 
 and consider
 
 any and all issues regarding custody.” Unless the parties stipulate to an order, the special master must set forth his recommendation or direction in a statement of decision, which shall become an order of the court “only upon the signature of the judicial officer adopting it, on an ex parte or noticed hearing basis as may be appropriate.” Because the special master’s findings require further action by the court, we view the order, taken as a whole, as a special reference. That determination, however, does not end our inquiry.
 

 2.
 
 Scope of Issues
 

 When, as here, the parties do
 
 not
 
 consent to a reference, the authority of the trial court to direct a special reference is limited to particular issues. The trial court has no power to refer issues other than those explicitly specified by statute.
 
 [13]
 

 (Williams
 
 v.
 
 Benton
 
 (1864) 24 Cal. 424, 425-426;
 
 In re Marriage of Galis, supra,
 
 149 Cal.App.3d at p. 151;
 
 Bird
 
 v.
 
 Superior Court, supra,
 
 112 Cal.App.3d at p. 599.) Section 639 authorizes a nonconsensual reference only in the following cases: “(a) When the trial of an issue of fact requires the examination of a long account on either side; in which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein. [CH] (b) When the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect. [<]D (c) When a question of fact, other than upon the pleadings, arises upon motion or otherwise, in any stage of the action. [U (d) When it is necessary for the information of the court in a special proceeding.
 
 [%
 
 (e) When the court in any pending action determines in its discretion that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon.” Section 639 does not permit a reference of all the issues in an action.
 
 (Badgley
 
 v.
 
 Van Upp
 
 (1993) 20 Cal.App.4th 218, 225 [24 Cal.Rptr.2d 406].)
 

 Here, the issues referred to a special master do not fall into any of the categories listed in section 639. The dispute between the parties does not
 
 *1210
 
 raise financial issues, so there is no need for an accounting (§ 639, subds. (a), (b)). Nor does the dispute involve discovery questions (§ 639, subd. (e)). The case is not a special proceeding (§ 639, subd. (d)); it is an ordinary civil suit, a paternity action. (See
 
 Aetna Life Ins. Co.
 
 v.
 
 Superior Court, supra,
 
 182 Cal.App.3d at p. 435 [law and motion proceedings within ordinary civil action are not special proceedings].)
 

 The trial court relied upon subdivision (c) of section 639, which permits a referee to decide “a question of fact, other than upon the pleadings, [which] arises upon motion or otherwise.” We conclude, however, that this subdivision, too, is inapplicable.
 

 First, an issue referred pursuant to subdivision (c) of section 639 must be “a question of fact.”
 
 [14]
 
 (See
 
 Bird
 
 v.
 
 Superior Court, supra,
 
 112 Cal.App.3d at p. 600.) The trial court has no authority to refer questions of law.
 
 (Ibid.)
 
 Here, the trial court’s sweeping reference of “any and all issues regarding custody” is not necessarily limited to strictly factual issues. Disputes involving interpretation of the existing custody orders, for example, may present questions of law.
 

 Indeed, at the proceeding held on May 10, 1996, a question arose over Kip’s desire to visit Rhys on a weekend during Paula’s six-week vacation time. That dispute involved legal as well as factual questions by calling for an interpretation and possible modification of the existing parenting schedule. It was not a proper issue for reference to the special master.
 

 Furthermore, as we read the statutory scheme for reference, subdivision (c) of section 639 contemplates reference of an existing question, one which actually
 
 “arises
 
 upon motion or otherwise” and is presently before the court. The trial court has no authority to compel a reference of unknown future disputes. Here, when the trial court issued its reference order, the court did not assign any particular unresolved custody issues to the special master.
 
 [15]
 
 However, Paula correctly points out that the trial court’s directive referring “any and all issues regarding custody” is so broad that it encompasses even issues which may arise in the upcoming remand proceedings on her motion to change residence to Rhode Island. We agree that the trial court’s order of
 
 *1211
 
 reference cannot be construed to include any issues which were not issues pending before the court at the time of its order.
 

 We do not, by this decision, seek to discourage the use of special masters in proper circumstances. We readily acknowledge that reference of time-consuming factual questions, with the costs borne by the parties themselves, can provide needed relief to the overburdened judicial system.
 
 (In re Marriage of Olson, supra,
 
 14 Cal.App.4th at p. 5, fn. 2.) We simply hold that the scope of a nonconsensual reference pursuant to section 639, subdivision (c), must be limited to factual questions on existing controversies.
 

 As we have already noted (fn. 13,
 
 ante),
 
 the scope of a nonconsensual reference is quite limited when compared to the scope of a consensual reference (“any or all of the issues in an action”). That distinction is carefully preserved in the statutes in order to comply with the constitutional mandate. (See
 
 Aetna Life Ins. Co.
 
 v.
 
 Superior Court, supra,
 
 182 Cal.App.3d at p. 436.) To give section 639, subdivision (c) other than a narrow meaning would blur that distinction. We therefore hold that the trial court’s reference to the special master of “any and all issues regarding custody” was over-broad and unauthorized by the statute.
 

 The orders are reversed. Costs are awarded to appellant.
 

 Strankman, P. J., and Swager, J., concurred.
 

 A petition for a rehearing was denied April 2, 1997, and respondent’s petition for review by the Supreme Court was denied June 11, 1997.
 

 [1]
 

 Paula later modified her request to seek permission to move, in the alternative, to Sonoma County.
 

 [2]
 

 Under that order, the parties have “joint legal and physical custody” of Rhys. Kip takes care of him Sunday, Monday, Tuesday; Paula Wednesday, Thursday, Friday. The parties alternate care on Saturday. They also share holidays and vacation time. This time-sharing schedule was a continuation of an interim order made on November 22, 1995. The order of April 8,1996, further provides that neither party shall change the residence of Rhys from San Francisco or San Mateo Counties without court order or written consent of the other party.
 

 [3]
 

 Even if no change of custody is called for by the move, the trial court has broad discretion to modify visitation arrangements with the noncustodial parent.
 
 (In re Marriage of Burgess, supra,
 
 13 Cal.4th at p. 40.)
 

 [4]
 

 In his declaration in opposition to Paula’s motion, Kip did suggest that his home should be Rhys’s primary residence. However, in his proposed custody order, Kip asked for continuation of shared physical custody. At most, Kip sought modification of his parenting schedule to increase his visits with Rhys.
 

 [5]
 

 “SoIe physical custody” means that the child resides with and is supervised by one parent, subject to court-ordered visitation by the other. (Fam. Code, § 3007.) “Joint physical custody” means each of the parents has significant periods of physical custody. (Fam. Code, § 3004.)
 

 [6]
 

 Cassady
 
 v.
 
 Signorelli
 
 (1996) 49 Cal.App.4th 55 [56 Cal.Rptr.2d 545] is distinguishable in that the trial court found that the mother’s desire to move was intended simply to frustrate the father’s relationship with the child.
 
 Burgess
 
 recognizes such a situation as an exception to the rule that the custodial parent need not establish the necessity for a proposed move.
 
 (In re Marriage of Burgess, supra,
 
 13 Cal.4th at p. 36, fn. 6.) Hence, the
 
 Cassady
 
 court framed the issue as whether the mother should be
 
 permitted
 
 to move and continued to adhere to a “need” test to evaluate the mother’s plan to move.
 

 [7]
 

 Dr. Lee’s recommendation was for a special master to decide issues such as pickup times, bedtime, diet, clothing, health care, schedule changes that do not alter the basic time share arrangement. Further, Dr. Lee recommended that the special master make advisory findings on education, religion, and major changes in time share arrangements.
 

 [8]
 

 The court ordered Kip to advance the special master costs by paying his one-half share directly to the special master and depositing the other half in an account in Paula’s name from which Paula would pay the special master.
 

 [9]
 

 We are not concerned here with the authority of a court commissioner to perform subordinate judicial duties. (Cal. Const., art. VI, § 22; Code Civ. Proc., § 259.) The special master appointed here was a mental health professional.
 

 [10]
 

 Kip mistakenly contends that the trial court had authority to order the reference under Family Code section 290, which allows the court to enforce its orders by such orders as it determines necessary. That statute does not give the trial court explicit authority to direct a reference of family law issues.
 

 In making her recommendation for a special master, Dr. Lee relied upon Family Code section 3160, which authorizes
 
 mediation
 
 in family law cases. It does not authorize reference of family law issues.
 

 [11]
 

 “The title given to the appointee in family law cases appears to be, in part, geographically based. In Northern California the appointee appears to be most often designated a special master, while in Southern California the appointee is called a referee.”
 
 (In re Marriage of Olson, supra,
 
 14 Cal.App.4th at p. 6, fn. 4.)
 

 [12]
 

 All further section references are to the Code of Civil Procedure.
 

 [13]
 

 In contrast, upon agreement of the parties, the court may order a reference to try “any or all of the issues in an action or proceeding, whether of fact or of law.” (§ 638, subd. 1.)
 

 [14]
 

 Counsel have not focused their arguments on the phrase “other than upon the pleadings,” nor have they enlightened us on the application of that phrase to the context here, a postjudgment motion within a paternity action to modify custody. We find it unnecessary for purposes of our opinion to interpret that perplexing phrase.
 

 [15]
 

 The only pending issue at that time was Kip’s request for an increase in his time with Rhys, but the trial court eventually issued its own order setting forth a detailed parenting schedule. Also pending was the question which therapist should be appointed for Rhys, but that question is not a custody question; it was not submitted to the special master.