[No. A028721. First Dist., Div. Five. Mar. 18, 1986.]

In re Marriage of ELISE W. and ROBERT R. ROSSON, JR.
ELISE W. ROSSON, Appellant, v.
ROBERT R. ROSSON, JR., Respondent.

*Retired judge of the municipal court sitting under assignment by the Chairperson of the Judicial Council.

**COUNSEL**

Eugenia Macgowan for Appellant.

C. Preston Shackelford and Coombs & Dunlap for Respondent.

**OPINION**

## KING, J.—

## I. Introduction

In this case we hold that where the parent providing the primary residence for children decides, for legitimate job-related reasons, to move from the community in which the children have lived for a significant period of time and in which the other parent resides, this can be found to constitute a persuasive showing of changed circumstances affecting the children justifying modification of a custody order. The court can properly make this determination in advance of the move actually occurring. We also hold that a child of sufficient age and capacity to reason so as to form an intelligent preference as to custody has a right to have that preference seriously considered by the court. Finally, pursuant to Civil Code section 4607,[1] we hold there is a privilege to refuse to disclose confidential information the court mediator receives during mediation; however, the privilege belongs to the court, not the parties, and by the adoption of written local rules permitting the mediator to make recommendations to the court as to custody or visitation of children, the court may choose to waive the privilege.

Elise W. Rosson appeals from an order modifying the provisions of a stipulated interlocutory judgment of dissolution which changed the primary residence of her two children, Gedge and Ilona, from her residence to that of their father, Robert R. Rosson, Jr.[2]

Elise contends: (1) the court abused its discretion in changing the children's primary residence because no material change of circumstances had yet occurred and no substantial evidence supported the court's finding that

---

[1] Unless otherwise indicated, all further statutory references are to the Civil Code.

[2] The stipulated interlocutory judgment of dissolution provided that the parents "shall have joint legal custody, care and control of the minor children" but provided that "said children are to physically reside, as their primary resident, with [Elise]." The order of modification provided that "the children are to physically reside, as their primary residence, with [Robert]," and provided where the children were to attend school and when they were to be with Elise. Except for the foregoing all other orders relating to custody of the children contained in the interlocutory judgment were continued in full force and effect.

Although neither the interlocutory judgment nor the order of modification specifies an award of physical custody as such, neither party complains of this on appeal so we need not consider it.

Prior to the modification the parties in reality had joint custody of their children, although it was not so designated in the interlocutory judgment. This is understandable since statutory authorization for joint custody was enacted in 1979, two years after entry of the interlocutory judgment. It seems clear from the fact that the modification, in effect, merely changed the designation of which parent would provide the primary residence for the children, that the trial court commendably was attempting to disturb the legal status quo as little as possible.

a potential move to San Francisco from Napa would be harmful to the children; (2) the court mediator's testimony should have been excluded because it was confidential; and (3) the order modifying custody is void because it went beyond Robert's request for modification. We affirm the judgment.[3]

## II. Fact and Procedural History

Robert and Elise are the parents of Gedge and Ilona, ages 13 and 10 at the time of the hearing. The 1977 dissolution judgment provided that the children were to reside with Elise as their primary residence and granted Robert visitation on alternate weekends and holidays, spring vacation, and half of Christmas and summer vacations. It provided the parties were to have joint legal custody, care and control of the children. Over the years between the interlocutory judgment and the motion for modification, Elise and Robert had worked out a system whereby the children would stay at Robert's house on Mondays and Wednesdays in addition to his visitation rights under the judgment. This probably occurred because for several years Elise worked in a job which required her to commute from Napa to Sacramento, San Francisco and Los Angeles. Thus Robert assumed substantial parenting responsibilities for the children's academic, athletic, social, and religious activities.

In January 1984, Elise found a new and better job in San Francisco. Her commute of 48 miles from Napa to San Francisco required that she leave her home at 6:20 a.m. and return at 7 p.m. She was unable to have breakfast, lunch or dinner with the children. Growing tired of a four-hour commute and wanting to spend more time with her children, she began to make plans to move herself and the children to San Francisco. As a result, in May 1984, Robert moved for a modification of the 1977 judgment to provide that the children would remain in Napa with him. The children had lived in Napa virtually all of their lives.

The superior court referred the matter to the court mediator for mediation pursuant to section 4607, subdivision (a),[4] but even with the assistance of the mediator the parties could not reach agreement.

---

[3]Because the result here is affirmance of the judgment we are not called upon to determine what the result of a reversal would be. The children and parents have functioned under the trial court's order for over one-and-a-half years and we cannot know what changes have occurred since that time. For this reason, when a reversal of a trial court's custody order occurs so long after the hearing, we believe the preferred practice would usually be to remand the case for a current determination of the issue.

[4]Section 4607, subdivision (a), states: "In any proceeding where there is at issue the custody of or visitation with a minor child, and where it appears on the face of the petition

The court then conducted a hearing of the motion for modification, receiving testimony from the parents and the court mediator, among others. In a closed proceeding in chambers the court also heard the testimony of the two children.[5] One child expressed no preference toward staying in Napa or moving to San Francisco, except the child liked "being able to see both [parents] the same, how I do now, but I'm sure I could manage to live."

The other child expressed a strong preference to stay in Napa "because this is—I feel comfortable. The surroundings are familiar and my friends and my school are here and I've lived here all my life and this—I just feel comfortable here and moving to the City would be like putting me in a cage. [¶] I felt I really strongly wanted to stay in Napa."

The mediator testified in open court that the parents had agreed that the children should remain together with whichever parent was to be the one

---

or other application for an order or modification of an order for the custody or visitation of a child or children that either or both such issues are contested, as provided in Section 4600, 4600.1 or 4601, the matter shall be set for mediation of the contested issues prior to or concurrent with the setting of the matter for hearing. The purpose of such mediation proceeding shall be to reduce acrimony which may exist between the parties and to develop an agreement assuring the child or children's close and continuing contact with both parents. The mediator shall use his or her best efforts to effect a settlement of the custody or visitation dispute."

[5]Pursuant to stipulation of the parties and counsel and the waiver of the parties of their right to be present, the testimony of the children was given to the court in chambers without the parties present, although their attorneys were present and the court reporter recorded the proceedings. It was also stipulated that nothing said by the children in chambers should be related to the parents. To the extent necessary to discharge our duty in issuing our opinion, we regret we cannot comply with the stipulation of the parties or the representation to the children that their comments would not be disclosed to their parents. Parties entering into such a stipulation should understand the appellate court may not be able to follow it.

Alternatively, and the only way to assure the stipulation and representation of nondisclosure will be followed, the parents and their attorneys can stipulate that the court can meet alone in chambers with the child. Personal experience has demonstrated to us that this is also a less traumatic procedure for the child because there can be an absolute assurance of confidentiality and the conversation can be carried on very informally without others present. Unfortunately, when this process is utilized, to the extent the court's decision is based on information or preferences expressed by the child, the court's order, for all practical purposes is nonappealable because of the lack of a record. However, by not using this process in the instant case and by appealing the trial court's decision, the parents have put this court in the position of violating their stipulation and the representation made to the children that their comments would not be disclosed to their parents. We must disclose the testimony of the children to the extent necessary to discharge our constitutional duty to issue a written opinion with reasons stated.

We approve of the in chambers procedure to minimize the exposure of the minor children to the adversary process and to avoid to the greatest extent possible placing the children in a position of having to choose between their parents. In a particularly poignant comment, undoubtedly speaking for the other child, and perhaps for all children whose parents are dissolving their marriage, one of the children in this case told the court, "Well, I wish that everything could be the way it was, but now that this has gotten started, of course it can't and I wish, I wouldn't have to hurt either parent."

providing their primary residence. Her opinion was that both children were very mature and that the child not expressing a preference did not want to hurt either parent or be in the position of choosing one parent over the other and might be professing neutrality in an attempt to rescue the distressed mother, while the other child had good reasons for an ardent preference to remain in Napa. The mediator strongly recommended that the children live primarily with their father in Napa during schooltime to maintain stability in what had become an unstable situation.

The court granted Robert's motion to modify the child custody and support order, finding a material change in circumstances based on Elise's plan to move herself and the children to San Francisco. The court also found the children had spent equal time with each parent and loved both parents equally.

The court concluded "after hearing all the evidence . . . it would not be in the best interests of the children, at least for the next several years, for them to be removed from Napa County to San Francisco, and, instead, would be harmful to physical, mental, and emotional health and growth."

It is clear from the record that both parties are excellent parents. The trial court found both parents love their children and that love is fully returned by the children. Neither the children, the mediator nor the court were selecting one parent over the other. The conclusion was that the children would be best served by being able to remain in the community in which they had lived virtually all of their lives.

### III. Change of Circumstances

Elise argues the court abused its discretion when it changed the children's primary residence because no material change of circumstances had yet occurred. She contends the court could modify the custody order only after she had actually moved and some actual "harm" to the children could be "demonstrated" by Robert.

Elise relies on three recent cases which she argues prohibited the court from "playing the clairvoyant" by predicting future harm from the potential move to San Francisco. (*In re Marriage of Carney* (1979) 24 Cal.3d 725 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028]; *Speelman* v. *Superior Court* (1983) 152 Cal.App.3d 124 [199 Cal.Rptr. 784]; *In re Marriage of Mehlmauer* (1976) 60 Cal.App.3d 104 [131 Cal.Rptr. 325].) The cases do not support this contention.

A court may modify a custody order where there has been a persuasive showing of substantially changed circumstances affecting the child. (*In*

*re Marriage of Carney, supra,* 24 Cal.3d at p. 730.)[6] The court has broad discretion to find circumstances that have substantially changed, but the burden of showing a change sufficient to warrant modification is on the party seeking the change. (*Id.,* at p. 731.)

 Elise is in error in her contention that no modification could occur until after a move had occurred and actual harm had been demonstrated. In her responsive declaration to Robert's motion she unequivocably stated, "I am moving my residence and that of my children to San Francisco." At the hearing she stated she had rented an apartment and planned to move to San Francisco that very month. A court in discharging its responsibility to children need not wait until they have actually moved when it is undisputed that a parent is moving. Once the appropriate change of circumstances is found, no finding of "harm" to the children is required as Elise contends; the court must ascertain what is in the best interest of the children. Neither *Carney* nor section 4600 requires "harm" to a child as a prerequisite to a modification of custody.

Elise planned to move from Napa to San Francisco, requiring that the children change schools and move away from the town in which they had lived virtually all of their lives. The mediator strongly recommended the children primarily reside with their father in Napa and remain in Napa schools. One child testified to a strong desire to stay in Napa, while the other sought to avoid choosing between parents. The parents agreed the children should not be separated. Robert testified about his intense involvement with the children's academic, athletic, social, and religious activities, all of which were centered in the Napa area. Thus the court's modification of the custody order was supported by substantial evidence.

 A child's preference must be given serious consideration by the court in acting upon a motion for modification of custody where: (1) the issue is whether children will be moved from the community where they have lived for most of their lives; (2) an excellent parent who remains in that community wishes to have the children reside with him or her, and (3) the

---

[6]Our Supreme Court in *Carney* recognized that the Legislature had fixed the "best interests of the child" as the basis for determining custody of a child, but held that to order a change of custody, as opposed to the choice of custody being determined for the first time, "there must generally be a persuasive showing of changed circumstances affecting the child. [Citation.] And that change must be substantial." Curiously, the opinion did not point to any legislative history in the enactment of section 4600 in reaching this conclusion, but cited cases decided prior to its enactment. It could be that when it adopted the "best interest" rule in enacting section 4600 the Legislature meant that standard to be applied in both initial custody proceedings and modification proceedings when it stated, "In any proceeding where there is at issue the custody of a minor child, the court may, during the pendency of the proceeding *or at any time thereafter,* make such order for the custody of the child during minority as may seem necessary or proper." (Italics added.)

children, for valid reasons, have expressed a preference to remain in the community.

■ Elise cites *In re Marriage of Mehlmauer, supra,* 60 Cal.App.3d 104, for the proposition that a 14-year-old child is not of sufficient age and capacity to reason so as to form an intelligent preference as to custody, thus the trial court erred in considering the preference of younger children here. *Mehlmauer* simply upheld the trial court's determination that the 14-year-old boy did not meet the statutory standard. Here we approve the trial court's determination that a younger child's preference should be considered because the child *did* meet the statutory measure. Maturity is not measured by chronological age. The mediator gave her opinion that both children were very mature. The court had an opportunity to personally observe the children and judge their sincerity, bearing and degree of maturity, while questioning them in chambers. With children 10 and 13 years of age we believe it is peculiarly the function of the trial judge to determine what consideration is to be given, if any, to their expressed preference as to custody.

To the extent the court decides consideration should be given to preferences of children as to custody, such preferences are entitled to greater consideration in a modification proceeding, as here, than would be appropriate in an initial custody determination. In the latter circumstance there will usually be considerable uncertainty as how a future arrangement will work out, while in the former the child has lived with the arrangement and can have a more informed basis for his or her preference.

### IV. Testimony by Mediator

■ Elise argues the court should have excluded the testimony of the court mediator because it was based on confidential information. She relies on section 4607, subdivision (c), which states, "Mediation proceedings shall be held in private and shall be confidential, and all communications, verbal or written, from the parties to the mediator made in a proceeding pursuant to this section shall be deemed to be official information within the meaning of Section 1040 of the Evidence Code."

Subdivision (e) of section 4607, however, provides an exception to this confidentiality rule: "The mediator may, consistent with local court rules, render a recommendation to the court as to the custody or visitation of the child or children." Elise argues that because the relevant Napa Superior

Court rule or policy was not published and in writing, the subdivision (e) exception does not apply.

Section 4607, subdivision (e), does not expressly require a written local rule; however, we know of no authority for a court to have local rules which have not been adopted by the court in writing. In *McLaughlin* v. *Superior Court* (1983) 140 Cal.App.3d 473 [189 Cal.Rptr. 479], the court upheld an unwritten local policy to the extent that it allowed the mediator to make a recommendation to the court.[7] But local court rules must be in writing so that counsel have them readily available in order to prepare properly for practice before the court. We believe the Legislature intended to permit a recommendation by the mediator only if consistent with local rules duly adopted in writing by the court.

Given the absence of a written local rule of the Napa Superior Court, it was error for the court to follow an unwritten policy and allow the mediator to testify and make a recommendation. However, the error was harmless in this case and, in any event, was waived by Elise's stipulation that the mediator could testify as to her recommendation and why she was making the recommendation.

As trial judges, each member of this division served in courts where mediators made recommendations to the court and we found this procedure to be invaluable in assisting parents to resolve difficult cases without contested hearings. Where permitted by local rule, the recommendation of a mediator, neutral as to the parents but acting as an advocate[8] for the best interest of the child, is significant, given the mediator's training, education and experience. However, the mediator's testimony is evidence to be weighed with all other evidence and it is the court, not the mediator, that bears the responsibility to decide custody. Although our experience leads us to approve the practice of having the mediator make a recommendation to the court, when able to reach a recommendation, the Legislature has wisely provided it is up to each court to decide whether or not its mediators may make recommendations. Recommendations of mediators to the court

---

[7]The local policy in *McLaughlin,* however, was held to be unconstitutional as a violation of the parties' due process rights because it also prevented them from questioning the mediator about his or her recommendation.

[8]Pursuant to section 4607 the mediator "shall use his or her best efforts to effect a settlement of the custody or visitation dispute." This charge requires the mediator to assist the parents to reach agreement by being an advocate for the best interest of the child. Our use of the term "advocate" is not meant in the connotation of attorney or as legal representative of the child. Pursuant to section 4604 legal counsel can also be appointed to provide legal representation if that is required in the best interests of the child. This can be done when special circumstances in a particular case require it. The instant case is a good example of where appointment of counsel for the children was unnecessary.

should not be permitted unless the court has duly adopted local rule of court authorizing it.

Elise also argues *McLaughlin* authorizes only cross-examination of the mediator, thus it was error to allow Robert's direct examination. This is absurd. The *McLaughlin* court used the term "cross-examine" in its opinion because the appellant in *McLaughlin* was appealing the denial of his request to cross-examine a mediator who had recommended against him on the custody issue. It is clear the *McLaughlin* court intended to provide a right to *both* parties to examine the mediator. The court stated, "the mediator designated by respondent court may not make a recommendation to the court subject to a 'local court rule,' or policy, which prohibits *either party from calling the mediator* and cross-examining him or her at a hearing on the contested issue or issues covered by the recommendation." (*McLaughlin, supra,* 140 Cal.App.3d at p. 483, italics added.)

■ Finally, Elise argues the confidentiality of the mediation process is absolute, therefore either of the parties can bar the mediator's testimony. She refers to the legislative history of section 4607, but ignores the express qualification stated in subdivision (c) that renders all communications from the parties to the mediator confidential "within the meaning of section 1040 of the Evidence Code."

Evidence Code section 1040 makes certain information "official" and gives the "public entity . . . a privilege to refuse to disclose it." Elise argues the parties share this privilege. But the comment by the Assembly Committee on Judiciary states section 1040 "permits the official information privilege to be invoked by the public entity or its authorized representative. Since the privilege is granted to enable the government to protect its secrets, no reason exists for permitting the privilege to be exercised by persons who are not concerned with the public interest." (See Assem. Com. on Judiciary com. to Evid. Code, § 1040, 29B West's Ann. Evid. Code (1966 ed.) p. 638.) Court personnel receiving the confidential information hold the privilege and must not make any disclosure to the public. However, the official information privilege does not preclude disclosure of information if received in court pursuant to local court rule.

Thus section 4607 does not give either party to a custody dispute a right to raise confidentiality of the mediation process to bar a mediator's testimony in contravention of a local court rule permitting it.

## V. Effect of Request in Moving Papers

Elise argues the trial court's order was void because it granted Robert more than he requested in his motion for modification. She relies on *In re Marriage of Wellman* (1980) 104 Cal.App.3d 992 [164 Cal.Rptr. 148].

Robert requested in his pleadings that if Elise moved to San Francisco the children make their primary residence with him, but if she did not move, the custody order should only be modified to reflect their informal arrangement which allowed the children to spend Mondays and Wednesdays with him as well as alternate weekends and holidays. Elise objects to the order because the court modified the interlocutory judgment to provide that the primary residence of the children should be with Robert without reference to the possibility of Elise not moving, and also provided for the children spending less time with Elise than Robert's moving papers had offered.

■ In *Wellman* the court specifically found that custody was probably not "at issue," but once custody became an issue the only thing a court could do is determine who had custody. (*Wellman, supra,* 104 Cal.App.3d at pp. 996-997.) In the present case, custody of the children was clearly in issue, although phrased by the parties and the court as where the primary residence of the children should be. The court determined that issue, with additional minor changes in visitation rights. The occurrence of a change of circumstances was not speculative because, although Elise had not yet moved, she was unequivocal that she was going to move and had already rented an apartment in San Francisco. Once the issue of modification of child custody is before the court it is not bound to grant or deny exactly what is proposed in the moving or responding papers or in argument by counsel, but must exercise its discretion consistent with the best interests of the children.

## VI. Conclusion

We cannot conclude this opinion without commenting upon the impossible task imposed upon trial judges in child custody disputes, as illustrated by this case. The trial judge, in effect, is required to be a "super parent," making decisions affecting the lives of children which should be made by their parents. No matter how well the judge handles a contested custody hearing and no matter how wisely he or she decides, at least one parent is sorely disappointed and the children are inevitably traumatized by having to go through adversary court processes. Worst of all the children are often placed in a position where pressure exists to choose between parents, each of whom they love. The structure of the postdissolution family, even one like the Rossons' which was functioning exceptionally well, is fragile at

best. When adversary custody hearings occur this fragile structure falls apart like Humpty Dumpty and it becomes impossible to put Humpty Dumpty together again.

We are profoundly sympathetic with the dilemma confronting single parents such as Elise. In these days of each parent pursuing a career, advancement up the career ladder may require a parent to move to a different community or, indeed, to a different part of the country. A parent may often face an irreconcilable conflict between his or her own career goals and the needs of children. Such a parent must give serious consideration to moves which are best for career advancement, since careers continue long past the minority of children and are important for the financial and psychological well-being of the parent. No parent will ever choose to move from a community if he or she believes the move would be truly harmful to their children. However, a parent's perspective, influenced by personal and employment considerations, may see a move as best for children when, in fact, it may not be. Where parents cannot agree and the decision must be made in the courtroom, the judge must consider, as the judge did here, the effect of the move upon the children when an equally capable and involved parent remains in the community and offers the children the opportunity to remain where they have lived almost all of their lives.

The Rosson children appear to have survived the breakup of their parents' marriage exceptionally well. Undoubtedly, this is attributable to the fact that their parents continued to work together as parents in a reorganized postdissolution family where the children truly had two homes with parents who loved them and who were strongly supportive of their relationships with the other parent. Even children who have survived the breakup of their parent's marriage so well, and certainly those children who have been traumatized by the crisis of the conflictive dissolution of a marriage and a dispute over custody, may have a greater need for stability than children in a stabile home environment. This stability, if the court finds it to be required, is more likely assured by permitting children to remain in the same community, attend the same schools and maintain the same friends.

It is not easy to be a single parent, especially with the added challenges of pursuing a career. However, the end of a marriage is not the end of being a parent, and each parent shares with the child the right of frequent and continuing contact with each other. Each parent also has the right to ask the court to decide what is in the best interest of the child when the parents find it to be impossible to make that decision themselves. In this case we are satisfied that everyone—the parents, the children and the court—has reached the correct decision.

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.