*639
 
 Opinion
 

 PETERSON, P. J.
 

 Appellant Richard P. Selzer contends the trial court erred in allowing his former wife Sheila to move from Ukiah to Santa Rosa where she obtained new employment, while taking the minor child of the former marriage with her. We find no abuse of discretion and affirm.
 

 I. Facts and Procedural History
 

 The relevant facts may be very briefly summarized for the purposes of background. Richard and Sheila Selzer began to live separately around the time their daughter Ashley was two or three; they subsequently divorced. Ashley has always resided with Sheila; the parents have joint legal custody; primary physical custody is with Sheila, while Richard has reasonable visitation rights. Richard and Sheila have been able to manage well with their daughter, who is loved by both parents. Originally, there were no major problems while all three continued to live near each other in Ukiah. They stipulated Richard would have Ashley on alternating weekends, alternating Tuesday and Thursday evenings, and additional periods agreeable to the parties. While the particulars of visitation have changed somewhat over the years and there have been some disagreements and inevitable tensions between the parties, both Richard and Sheila recognize it is important for Ashley to have ongoing contact with both her parents.
 

 When their daughter was eight, Sheila accepted a new and much better job in Santa Rosa. For some months she continued to reside in Ukiah but commuted every workday to Santa Rosa.
 

 The trial court recognized the burden placed upon Ashley and her mother by the commute from Ukiah to Santa Rosa, which by freeway requires about an hour each way, depending on road conditions and traffic. Spending two hours or more on the road each workday took a toll on Sheila and her daughter. They had to leave home very early in the morning and return late at night; there was never enough time to do everything on a workday, and upon returning home it was already time to get the child ready for bed. Sheila, therefore, desired to move to Santa Rosa, nearer her new job.
 

 Richard opposed this move and sought an order from the court preventing Ashley’s removal from the area. His moving papers justifiably pointed out that such a move would make visitation more difficult and would remove his daughter from the community where she grew up and where her father would continue to live. Richard has remarried and now has a young son; Ashley’s removal from the community would divide her from her young half
 
 *640
 
 brother. Richard understandably desires to be a part of his daughter’s life on an ongoing basis, rather than be confined to less frequent visitation. He contended the move to Santa Rosa was not in Ashley’s best interests.
 

 After hearing evidence on the matter, the trial court ruled that Sheila and her daughter should be allowed to move to Santa Rosa, but Richard should be granted increased rights of visitation. The trial court also ordered that Sheila drive Ashley to Ukiah for visitation with Richard, or pick her up in Ukiah, at the option of the parties. This timely appeal followed.
 

 II. Discussion
 

 We conclude there was no abuse of discretion by the trial court, and affirm its order allowing the move by Sheila and Ashley from Ukiah to Santa Rosa. In so concluding, a discussion of the applicable legal principles as interpreted by recent case law is helpful. In fact, this is yet another case in which “we must briefly review a tangled web of precedent.”
 
 (In re Marriage of Smith
 
 (1989) 209 Cal.App.3d 196, 200 [257 Cal.Rptr. 47].)
 

 A.
 
 In re Marriage of Rosson
 

 We begin with one of our own prior decisions,
 
 In re Marriage of Rosson
 
 (1986) 178 Cal.App.3d 1094 [224 Cal.Rptr. 250]
 
 (Rosson).
 
 In
 
 Rosson,
 
 this court (per Justice King) faced an analogous situation and upheld a trial court decision which reached a different conclusion; we explained our holding as follows: “In this case we hold that where the parent providing the primary residence for children decides, for legitimate job-related reasons, to move from the community in which the children have lived for a significant period of time and in which the other parent resides, this can be found to constitute a persuasive showing of changed circumstances affecting the children justifying modification of a custody order.” (P. 1098.) We upheld in
 
 Rosson
 
 the trial court’s decision to remove the minor children of the marriage from the custody of their mother, who had accepted a better job offer about an hour away from the previous family residence in Napa, so that they could reside with their father who remained in Napa. This result was strongly supported by a court appointed mediator and by the desires of the children; it was in the best interests of the children to remain in their childhood home of Napa rather than move to San Francisco with their mother.
 
 (Id.
 
 at pp. 1099, 1101-1103.) Thus, in
 
 Rosson
 
 we found no abuse of discretion when the trial court reached a conclusion in the best interests of the children, supported by substantial evidence. (Pp. 1099-1102.) We will also find no abuse of discretion here, as we will explain below, on the particular facts of this case.
 

 B.
 
 In re Marriage of Fingerí
 

 Somewhat similar circumstances were subsequently faced by the Second District, Division Six, in the case of
 
 In re Marriage of Fingert
 
 (1990) 221
 
 *641
 
 Cal.App.3d 1575 [271 Cal.Rptr. 389]
 
 (Fingert).
 
 The parties were the parents of a six-year-old boy; at the time of their separation around the time the boy was born, they lived in Ventura County; subsequently the mother, who had primary custody of the child, moved to San Mateo County to accept a better job. The father secured a court order from a Ventura County judge requiring either that both the mother and child move back to Ventura County to facilitate visitation, or that the child return to Ventura County alone and reside in the custody of the father. The Second District vacated this order as an abuse of discretion, summarizing its ruling in the form of a brief Socratic dialogue as follows: “Must. . . the mother of a six-year-old child, who is the primary custodial parent, be required to relocate to the area where the father resides to facilitate his visitation or lose custody? No.”
 
 (Id.
 
 at p. 1577.)
 

 The
 
 Fingert
 
 court explained its view that the local trial court’s order for the return of the child to Ventura County was an abuse of discretion, because there was no showing the return of the boy to Ventura was in the best interests of the child himself; the order appeared to be based in part simply upon the father’s greater wealth; and the court suggested in apparent dicta that the order violated the constitutional rights of the mother to travel and seek a living elsewhere: “Courts cannot order individuals to move to and live in a community not of their choosing. To attempt to do so is inconsistent with both the federal and California Constitutions.” (221 Cal.App.3d at p. 1581.) Unfortunately, without citing or distinguishing
 
 Rosson, supra,
 
 the Second District sought to summarize prior decisional law as follows: “[Mother] cannot be ordered to choose between her right to resettle, find new employment, start a new life and retain custody of her child. Appellate decisions in California that have approved restrictions upon a custodial parent’s choice of domicile have arisen only where the parent moving does so with an intent to frustrate or destroy the other parent’s custody or visitation rights. Where a custodial parent sought permission to relocate, such permission has sometimes been denied when such relocation was found to be motivated by an intent to interfere with the other parent’s custody or visitation rights or not to be in the [child’s] best interests.
 
 (Gudelj
 
 v.
 
 Gudelj
 
 (1953) 41 Cal.2d 202, 208-209 [259 P.2d 656].)”
 
 (Fingert, supra,
 
 221 Cal.App.3d at p. 1582.)
 

 The Second District in
 
 Fingert
 
 was undoubtedly correct in its actual holding that the trial court’s order was an abuse of discretion, because it clearly resulted from a combination of inapplicable factors and was not in the best interests of the child. There is, however, some tension between our own
 
 Rosson
 
 decision and the rather expansive dicta in
 
 Fingert
 
 which suggests a court lacks authority to order a custodial parent not to remove the
 
 *642
 
 minor to a distant place, since this would violate the custodial parent’s constitutional right to travel. Moreover, as the
 
 Fingert
 
 court itself acknowledges, the previous decision of our own Supreme Court in
 
 Gudelj
 
 v.
 
 Gudelj
 
 (1953) 41 Cal.2d 202, 208-209 [259 P.2d 656], had apparently affirmed an order which had done just that, without violating anyone’s constitutional right to travel.
 

 The
 
 Fingert
 
 court perhaps failed at the time to keep firmly in mind the fact that all parties to these disputes, including the children, have a constitutional right to travel; someone, by the very nature of the case, will have to travel or not, in order to achieve visitation with children residing in another home. In the collisions of these rights, it should be the best interests of the child, not overly broad abstractions derived from travel through constitutional theories, which should be the courts’ paramount concern.
 

 In any event, we find the holding of
 
 Fingen
 
 entirely consistent with the conclusion that the best interests of the child in question here were properly protected by the trial court.
 

 C.
 
 In re Marriage of Carlson
 

 The Fifth District touched upon these issues one year after
 
 Fingert
 
 in a similar “move away” case,
 
 In re Marriage of Carlson
 
 (1991) 229 Cal.App.3d 1330 [280 Cal.Rptr. 840]
 
 (Carlson).
 
 The Fifth District in
 
 Carlson
 
 upheld the trial court’s “ ‘wide discretion’ ” to enter an order requiring that neither parent take the child of the former marriage with them when moving out of state. (P. 1338.)
 
 Carlson
 
 also disavowed the constitutional right to travel analysis of
 
 Fingen,
 
 which
 
 Carlson
 
 suggested was merely “dicta”; but ultimately the Fifth District also declined to resolve the constitutional right to travel issue, because the point was not properly raised by the circumstances of the case: “To the extent
 
 Fingen
 
 also found a constitutional violation, the point is arguably dicta since the court previously determined the trial court abused its discretion for a different reason. In addition, the order in the instant case did not have the practical effect of compelling the mother to either change her established residence or lose custody of the children. In any event, the mother has not demonstrated the trial court here wrongfully deprived her of a constitutional right. We will therefore not pursue the matter.” (P. 1340.) Shortly thereafter, however, the very court which had decided
 
 Fingen
 
 was required to pursue the matter.
 

 D.
 
 In re Marriage of McGinnis
 

 The Second District, Division Six, revisited this issue a year after
 
 Carlson
 
 in the case of
 
 In re Marriage of McGinnis
 
 (1992) 7 Cal.App.4th 473 [9
 
 *643
 
 Cal.Rptr.2d 182]
 
 (McGinnis).
 
 Significantly, the Second District now cited both our own decision in
 
 Rosson, supra,
 
 and the Fifth District’s decision in
 
 Carlson, supra. (McGinnis, supra,
 
 at p. 479.) The Second District also recognized the conceptual difficulties of the constitutional travel analysis contained in dicta in its own previous
 
 Fingert
 
 decision: “We recently spoke to the constitutional right to travel in the context of a family law ‘move away.’ In
 
 [Fingert], supra,
 
 221 Cal.App.3d at pages 1580-1581, we recognized the constitutional right to travel and held that ‘[c]ourts cannot order individuals to move to and live in a community not of their choosing.’ [Citation.] Unlike the situation in
 
 Fingert, supra,
 
 here, the trial court did not order mother or father to move. It merely gave its permission to move the children’s residence. [¶] Mother is free to travel inter- or intrastate. The issue is whether she can take the children with her. We certainly recognize mother’s dilemma.
 
 ([Fingert], supra,
 
 221 Cal.App.3d at p. 1582.) A trial court’s order denying her request to remove the children may ‘chill’ her constitutional right to travel, but only indirectly.
 
 ([Carlson], supra,
 
 229 Cal.App.3d at p. 1339.) Mother’s rights, however, cannot be viewed in isolation. There are other competing rights. The case must also be viewed from father’s perspective. [Citation.] He too has the constitutional right to travel and the concomitant right not to travel. He should not be forced to sell the family home and move to Arcadia to continue the shared parenting arrangement.”
 
 (McGinnis, supra,
 
 7 Cal.App.4th at p. 480.)
 

 McGinnis,
 
 thus, recognized the conceptual difficulties created by the previous attempt to decide these “move away” cases according to ill-fitting constitutional criteria, since all parties have the same and equal constitutional right to travel. Importation of the right to travel into these cases does not aid their resolution, because this analysis inevitably results in a deadlock; the parties have equal rights to travel, so any defensible disposition must be based primarily upon the best interests of the child, as
 
 McGinnis
 
 also acknowledged. (7 Cal.App.4th at p. 478.) More critically, those theories about the right to travel do not provide meaningful guidance to a trial court faced with the hard choices presented by these cases.
 

 As a practical matter, the best interests of the child will often parallel those of the primary caretaker parent, since the interests of the child in continuity and permanency of custodial placement with the primary caretaker parent may otherwise be defeated. (See
 
 Fingert, supra,
 
 221 Cal.App.3d at pp. 1580-1582.) However, this alignment of interests is not inevitable; and in our prior
 
 Rosson
 
 decision, at least one of the children in fact voiced a different interest, preferring permanency of residence in the community to permanency of custody with the mother. (178 Cal.App.3d at p. 1100.)
 
 *644
 
 Further, while the expressed preference of the child may not be determinative, and there may be problems with a very young child in understanding or even reliably ascertaining the child’s own wishes through the filter of parental desires, in the absence of an expressed view, the best interests of the child may often be presumed to favor permanency of custodial placement.
 

 On this critical issue there is additional, albeit problematic, language from the Second District, Division Six. In the
 
 McGinnis
 
 decision, the court disavowed in part its previous
 
 Fingert
 
 dicta, yet also purported to establish a new rule of law requiring that the best interests of the child be demonstrated by forcing the parent who wishes to move to prove that a change of residence is “ ‘essential and expedient’ and for an ‘imperative reason.’ ”
 
 (McGinnis, supra,
 
 7 Cal.App.4th at p. 479; see also
 
 In re Marriage of Carney
 
 (1979) 24 Cal.3d 725, 730-731 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028]
 
 (Carney).)
 

 The case from which the
 
 McGinnis
 
 court purportedly derived this standard, our Supreme Court’s
 
 Carney
 
 decision, does not, in our view, actually support it.
 
 Carney
 
 involved the standard for the change of the
 
 custody
 
 of the child, not the issue of a change of
 
 residence
 
 of the custodial parent, which generally presupposes continuity of custody. (24 Cal.3d at pp. 730-731.) Case law (including
 
 McGinnis
 
 itself) otherwise uniformly holds the issue of a change of residence is to be determined, in the discretion of the court, based upon the best interests of the child, not after a showing that a move is essential, expedient, or imperative. It would seemingly be almost impossible to show that a move was “essential”; always there would be a theoretical possibility that the custodial parent could simply forgo any employment, and perhaps seek welfare benefits in the community where he or she presently resides. We turn to this issue in analyzing our next and final precedent.
 

 E.
 
 In re Marriage of Roe
 

 The Second District, Division Four, recently addressed this point, and disavowed the problematic standard expounded in
 
 McGinnis,
 
 in the case of
 
 In re Marriage of Roe
 
 (1993) 18 Cal.App.4th 1483, 1489 [23 Cal.Rptr.2d 295]
 
 (Roe):
 
 “Civil Code section 4600, subdivision (d) [now recodified as Family Code section 3040, subdivision (b) (section 3040(b))] gives the court the ‘widest discretion’ in choosing a parenting plan that promotes the best interest of the child. As to the suggestion in
 
 McGinnis,
 
 derived from dicta in cases involving change of custody, that when a custodial parent seeks to move the children he or she must prove the move is expedient, essential or
 
 *645
 
 imperative [citation], we reject this language as inconsistent with the statute as it tends to curb or limit the discretion of the trial court.”
 

 The
 
 Roe
 
 court held the moving parent does in fact bear a burden of proof, but it is the burden (properly derived from the standard of the best interests of the child) to show that the move was not only necessary to the custodial parent but would also be in the best interests of the child. (18 Cal.App.4th at pp. 1489-1490.)
 

 We observe that this standard, derived from the present language of section 3040(b), also properly harmonizes and strikes a balance between the rights of the custodial parent, the noncustodial parent, and the child. There is no need to resort to cases concerning the constitutional right to travel in order to do this; the state law standard applied in California has no constitutional infirmity, and reaches a constitutional result when properly applied. (See
 
 McGinnis, supra,
 
 7 Cal.App.4th at p. 480;
 
 In re Marriage of Battenburg
 
 (1994) 28 Cal.App.4th 1338 [33 Cal.Rptr.2d 871].)
 

 F.
 
 Application of the Proper Standard in This Case
 

 When we apply the proper legal standards derived from the case law to this appeal, we find the trial court did not abuse its discretion. Section 3040(b) in very clear language “allows the court and the family the widest discretion to choose a parenting plan that is in the best interests of the child." If anything can be gathered from the precedents summarized above, with their divergent fact patterns and sometimes divergent approaches to a “move away” issue, it is that when the trial court makes its decision after consideration of the best interests of the child, with evidentiary support for that decision apparent from the appellate record, a reversal for abuse of discretion is very unlikely. While the discretion of the trial court in a “move away” case is certainly not unlimited (cf.
 
 Fingert, supra,
 
 221 Cal.App.3d at p. 1582), the order entered here was well within the scope of the court’s discretion.
 

 There is no question here as to the need of the mother, Sheila, for income from employment which will be sufficient to support herself and her family. Due to depressed economic conditions in Ukiah, she was forced to seek employment in Santa Rosa, about an hour away. For some months she commuted to this job and continued residing in Ukiah, but the strain of the long commute on a single parent and the child became too much. These were circumstances which would cause a reasonable person to relocate; it does not appear the move to Santa Rosa is intended simply as a means of frustrating the visitation rights of Richard, the father. Nor is this a case such as
 
 Rosson,
 
 
 *646
 
 in which a teenaged child voiced a strong preference to stay in the community with the father rather than move with the mother; here we deal with a younger child who has always resided with the mother, and the interests of continuity of custody predominate.
 

 This case also does not implicate the constitutional right to travel—instead it implicates the best interests of the child. It was plainly unrealistic to suggest Sheila and her daughter should simply forgo income or go on public relief. This would not be in the best interests of the child. Since the only available job paying sufficient income was in Santa Rosa, the choice for the court was simply one of either requiring a single mother and child to bear the brunt of a daily two hours of commuting; or on the other hand, splitting between Sheila and Richard the task of the one-hour ride necessary, on weekends and other occasions, to accommodate visitation. The trial court did not abuse its discretion in striking the balance it did, which is the same balance many other two-career families must strike in hard economic times. While we strongly sympathize with Richard’s desires to keep his daughter in the community, the move to a new home an hour away will not completely or unduly frustrate his visitation rights.
 

 This is not one of the rare cases in which an insensitivity to the best interests of the child, an illegitimate attempt to frustrate visitation rights, or an abuse of discretion by the trial court is shown. (See
 
 Roe, supra,
 
 18 Cal.App.4th at p. 1490.)
 

 In our mobile society, economic necessity often dictates that custodial or noncustodial parents, in improving their economic lot, must change their residences during their child’s minority. We recognize that this fact of modern life necessarily will effect changes in the nature and extent of continuing contact with the child by the noncustodial parent who must move or who must remain situate in the locale from which the custodial parent must move. Trial courts have a variety of discretionary means to minimize loss of contact and visitation by the noncustodial parent under such circumstances, e.g., increasing the time during vacation periods the noncustodial parent has the child, making appropriate orders for discharge of the child’s transportation expenses, and the like.
 

 These problems in “move away” custodial cases have possible numerous and varied solutions, which involve exercise of a trial court’s widest discretion. They may be resolved by appropriate consideration of, inter alia, a custodial child’s age and preference, if expressed; an order granting the noncustodial parent expanded custodial or visitation time with the child to compensate for that lost by the move; the moving party’s motives; the
 
 *647
 
 necessity, if any, of continuity in custody; and the effect on the economic condition of both parents of the move proposed. These and other appropriate considerations, however, lead to and are subsumed by the ultimate and paramount issue to be decided by the lower court: What result is in the best interests of the custodial child, rather than that of the parents?
 

 Appellate courts cannot micromanage the custodial status of minor children who are subject to the lower court’s jurisdiction in move away cases. A high degree of deference must, thus, be accorded to the exercise of the latter’s wide discretion.
 

 Although the parties and trial court faced a typically trying problem in this move away case, the trial court’s decision was a proper one, well within the scope of that discretion.
 

 III. Disposition
 

 The order appealed from is affirmed.
 

 King, J., and Haning, J., concurred.
 

 A petition for a rehearing was denied November 16, 1994, and appellant’s petition for review by the Supreme Court was denied January 18, 1995.