[No. A070382. First Dist., Div. Five. Aug. 29, 1996.]

JAMES CASSADY, Plaintiff and Respondent, v.
DONNA SIGNORELLI, Defendant and Appellant.

**COUNSEL**

Donna Signorelli, in pro. per., for Defendant and Appellant.

James Cassady, in pro. per., for Plaintiff and Respondent.

**OPINION**

**PETERSON, P. J.**—Appellant Donna Signorelli (mother) contends the trial court abused its discretion in making rulings regarding the custody and visitation rights of mother and respondent James Cassady (father), who are

the parents of a young daughter, Grace, over whom they exercise joint legal custody. The trial court, inter alia, ordered mother not to remove Grace from the Bay Area to Florida, since this would not be in Grace's best interests and would frustrate father's rights of joint custody and visitation. The trial court also ruled father should have regular overnight visitation with Grace on Wednesday evenings; Grace should attend school rather than receive home schooling from mother; and father should have the final authority to make medical decisions regarding Grace, in the event mother and father could not agree on the need for medical care.

We find no abuse of discretion and affirm the trial court's rulings in their entirety.

I. FACTS AND PROCEDURAL HISTORY

Mother and father had a personal relationship which ended before Grace was born. Since the parties were not married, they tried to agree on appropriate levels of support, visitation, and care for Grace; but there was a breakdown of communication, their relationship became acrimonious, and this led to a great deal of litigation concerning Grace.

Initially, the trial court awarded mother and father joint custody of Grace, with mother as the primary caretaker and father entitled to visitation and providing regular support. The trial court also ordered that mother should not remove Grace from the Bay Area (defined as the nine Bay Area counties) to Florida.

Mother continued to seek to remove Grace to Florida. In addition, differences had arisen between the parties regarding visitation, Grace's schooling, her medical care, and other matters. In May 1994, the court entered a new order on these matters which reiterated its previous rulings and added new rulings. The May 1994 order, inter alia, prevented removal of Grace from the Bay Area; set a visitation schedule including overnight visits with father on Wednesday nights; ordered that Grace attend an appropriate school and not be home-schooled by mother, and ordered the parents to follow the directions of Grace's pediatrician regarding medical care.

Problems relating to these issues continued, and mother continued to seek court orders relative to them. In May 1995, the trial court entered the order from which mother appeals. The May 1995 order reiterates and expands the previous orders. It again forbids the removal of Grace's residence from the Bay Area; allows father to have overnight visitation with Grace on Wednesday evenings; contemplates that Grace will attend kindergarten (she has now

finished first grade), and orders that father shall have final authority over Grace's health care decisions if the parties cannot agree. Mother filed an appeal from this order in June 1995.

## II. DISCUSSION

We may only review the trial court's rulings for an abuse of discretion. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32 [51 Cal.Rptr.2d 444, 913 P.2d 473] (*Burgess*); *In re Marriage of Selzer* (1994) 29 Cal.App.4th 637, 646-647 [34 Cal.Rptr.2d 824] (*Selzer*); see *In re Robert D.* (1984) 151 Cal.App.3d 391, 396-397 [198 Cal.Rptr. 801] (*Robert D.*); *In re Corey A.* (1991) 227 Cal.App.3d 339, 346 [277 Cal.Rptr. 782]; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067 [24 Cal.Rptr.2d 654]; cf. also *Clarke* v. *Clarke* (1950) 35 Cal.2d 259, 261-262 [217 P.2d 401]; *Michael M.* v. *Giovanna F.* (1992) 5 Cal.App.4th 1272, 1279-1280 [7 Cal.Rptr.2d 460] [Legal issues arising between unmarried parents of a child are analogous to those arising between former spouses.].) We find no abuse of discretion here.

### A. *Order Barring Grace's Removal to Florida*

The trial court refused to allow mother to remove Grace to Florida, since this would not be in Grace's best interests. (See Fam. Code, § 3011.)

■ "The standard of appellate review of custody and visitation orders [where one parent seeks to move away with a child of the parties] is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. [Citation.]" (*Burgess, supra*, 13 Cal.4th at p. 32.)

■ We find no abuse of discretion under this standard. The trial court could quite properly conclude it was in Grace's best interests to have continued regular visitation with her father, with whom she has a good relationship, and that a move to Florida would almost entirely frustrate this interest in a continued parental relationship. The trial court observed that mother's wish to move to Florida with Grace was not supported by her professed need for such a move, and seemed intended simply to frustrate father's relationship with Grace. The trial court, therefore, could properly find that if mother was to retain primary physical custody of Grace, she should continue to reside in the Bay Area. (See *Selzer, supra*, 29 Cal.App.4th at p. 645; *In re Marriage of Rosson* (1986) 178 Cal.App.3d 1094, 1107 [224 Cal.Rptr. 250].)

Mother raises a number of appellate contentions in this regard; she reiterates or reemphasizes them in her additional letter brief directed to the legal issues raised by the recent case of *Burgess*, *supra*, 13 Cal.4th 25. Mother principally contends she needed to move to Florida to begin a new career as a "parapsychologist." However, there are apparently almost no jobs available in that field anywhere in the world, and she had no jobs in that field waiting for her in Florida which would allow her to support herself and Grace. The closest thing to a prospect for employment was a letter from a school stating that mother could teach a course in parapsychology at low pay, if she could find enough paying students to take her course and thereby support herself. This was hardly likely to provide necessary support, and would not appear any better than her prospects in that field in the Bay Area, where there might be even more potential students. As the trial court aptly observed, mother is not seriously seeking employment in the Bay Area, and simply wishes to get away from father by moving elsewhere. She had never supported herself as a "parapsychologist"; and she had always previously been employed in California as a jeweler, a field in which she had more realistic prospects of employment in the Bay Area. Under *Burgess*, we find no abuse of discretion in the trial court's decision, on this record, that it was in Grace's best interests for her to remain in the Bay Area rather than follow mother's very uncertain plan of supporting Grace and herself as an academic parapsychologist. (See 13 Cal.4th at p. 32.)

Contrary to mother's contentions, the trial court did not err by failing to give proper weight to the presumption that mother, as the primary physical caretaker, should be permitted to relocate unless relocation was not in Grace's best interests. (See *Burgess*, *supra*, 13 Cal.4th at p. 32.) Rather, the trial court properly exercised its great discretion to determine the best interests of Grace, and decided a relocation of her residence based only upon mother's somewhat whimsical plans and very uncertain prospects in Florida was not in Grace's best interests. (*Ibid.*)

Mother also contends she should be entitled to move away with Grace because the trial court in 1991 ordered that she not do so for three or four years, in order to allow Grace to grow old enough to travel. Mother transforms this into a finding that when four years passed, she should be able to relocate at will. However, the trial court did not abuse its discretion in determining when it reviewed all the evidence again in 1995 that relocation to Florida would still not be Grace's best interests. (See *Burgess*, *supra*, 13 Cal.4th at p. 32.) This is especially true when we consider the matter in light of the related problems discussed in the next section of this opinion.

This is not a case, as mother urges, that is governed by the specific facts of *Selzer*, *supra*, where we affirmed a trial court order allowing a mother to

relocate an hour's drive away in order to seek work. (29 Cal.App.4th at pp. 645-646.) The mother in that case had a good faith reason to relocate, a job in a neighboring town which was certain and not speculative, and this job was not being used as an apparent pretext to defeat visitation; the move did not completely prevent an ongoing father-child relationship. (*Ibid.*)

Most critically, our decision in *Selzer* was predicated upon the thread running through all these move-away cases: It is the trial court, not an appellate court, which is able to assess the best interests of the child, based upon the evidence presented. The trial court's decision will be overturned only for an abuse of that discretion. The trial court did not abuse its discretion in concluding that a continuation of the present joint custody arrangement in California, with visitation and a continued relationship with Grace's father, was in Grace's best interests.[1] (See *Burgess, supra,* 13 Cal.4th at p. 32.)

### B.   *Other Visitation, Schooling, and Medical Care Issues*

■ The trial court ordered that father should have increased visitation rights, and specifically should have overnight visitation rights with Grace on Wednesday nights. We find no abuse of discretion. (See *Burgess, supra,* 13 Cal.4th at p. 32.) Mother contends midweek overnight visitation was not in Grace's best interests, and the trial court instead should have opted for visitation with father on alternate weekends. Mother theorizes that since she would be allowed to take Grace anywhere in the Bay Area counties, "which can span approximately 165 miles and over 2.5 hours of driving," the driving time for Grace on Wednesday evenings when she was being shuttled between mother's residence and father's residence might be too great. However, the record reflects mother resides in El Sobrante and father resides nearby in Richmond. Mother's professed concerns about excessive driving time on Wednesday evenings, therefore, appear completely speculative, and entirely unsubstantiated by the record.

■ Mother also contends the trial court erred in ordering that Grace should attend an appropriate public, private, or parochial school, rather than be home-schooled by mother. There was certainly no abuse of discretion in the circumstances of this particular case; the trial court's ruling was required

---

[1] Mother also contends "The Trial Court's Order Violates Mary Anne's Right to Travel." This argument is incomprehensible. Mother's name is Donna and her daughter's name is Grace. We do not know who "Mary Anne" is, or to what trial court order mother is referring. It appears this argument heading may relate to some other case. To the extent mother argues the trial court's exercise of its broad discretion to act in the best interests of the child, Grace, unconstitutionally burdens mother's own right to travel, we reject the argument for the reasons we have stated in *Selzer, supra,* 29 Cal.App.4th at pages 646-647.

by Grace's best interests. As the trial court found based upon expert testimony and its own observations of mother's demeanor, she "generally has difficulty coping with the stresses and pressures of life"; has "questionable decision making ability"; and has "a flaky and at times almost delusional quality in her thinking." This would obviously impair her ability to competently teach a full range of subjects to Grace. The trial court did not err in concluding Grace would be better off in a regular school with peers her own age to interact with, and teachers to provide a necessary and proper education, rather than being forced to stay home all day with mother. While we acknowledge a parent might normally have the right to provide home schooling, private schooling, or governmental schooling to a child, the trial court's ruling on this particular record was certainly not an abuse of discretion. (See, e.g., *People* v. *Serna* (1977) 71 Cal.App.3d 229, 232-233 [139 Cal.Rptr. 426] [Parents could not refuse to send their child to public school even though they believed the school might be harmful to their child because it had not yet been completely desegregated.].)

■ Finally, mother contends the trial court erred in ruling that father should have the final say regarding Grace's health care decisions, in the event of disagreement between the parties. As the trial court observed, mother had difficulty coping with the stresses and pressures of life, had questionable decisionmaking ability, and at times had a delusional quality to her thinking. The trial court had also previously observed, "time and again the court found that matters testified to by mother did not align with what appeared to the court to be reality." These facts found by the court would obviously indicate mother's ability to make appropriate medical decisions for Grace might be impaired. Given the trial court's "very extensive discretion in determining what will be in the best interests of [the] child" (*Robert D.*, *supra*, 151 Cal.App.3d at p. 396), and the demonstrated need to provide an appropriate decision maker for Grace's medical needs (see *In re Eric B.* (1987) 189 Cal.App.3d 996, 1005-1006 [235 Cal.Rptr. 22]), the trial court's order in this respect was proper.

We find no abuse of discretion in the trial court's orders.[2]

---

[2]Mother also contends the trial court erred in not granting her attorney fees for her representation of herself; and she seeks an award of fees on appeal, stating, "The cost of litigation has been burdensome and an award is requested." We certainly find no abuse of discretion by the trial court in this respect, and decline to award fees on appeal. While we recognize this litigation has been burdensome to all parties, we also note that part of the reason this litigation has been so burdensome is because mother apparently lacks a realistic perspective and a proper outlet for her considerable energies, such as might be provided by gainful employment in some field more realistically likely to provide income than parapsychology.

III. Disposition

The trial court's rulings are affirmed. The parties shall pay their own costs on appeal.

Haning, J., and Ely, J.,* concurred.

A petition for a rehearing was denied September 20, 1996, and appellant's petition for review by the Supreme Court was denied November 20, 1996.

---

*Judge of the Solano Superior Court, assigned by the Chief Justice pursant to article VI, section 6 of the California Constitution.