Filed 6/16/15  Marriage of Armstrong CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of BRIAN and MARIA ALBERTINA ARMSTRONG. | B254724 |
| | (Los Angeles County Super. Ct. No. ED038656) |
| BRIAN WAYNE ARMSTRONG, Appellant, v. MARIA ALBERTINA ARMSTRONG, Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Dianna Gould-Saltman, Judge.  Affirmed.

Brian Wayne Armstrong, in pro. per., for Appellant

Holmes & Holmes and Robert K. Holmes, for Respondent.

_____

Brian Wayne Armstrong, representing himself, appeals from the order entered after the court adopted the report of an appointed referee calculating support arrears and attorney fees owed to Armstrong's wife, Maria Albertino Armstrong, and allocating the remaining portion of the escrow proceeds from the sale of community real property. Brian[1] contends the referee was improperly appointed and was biased against him; his findings were not supported by substantial evidence; and the trial court abused its discretion in adopting the report. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A judgment dissolving the Armstrongs' marriage was entered on April 6, 2012. The judgment required Brian to pay Maria certain base levels of child and spousal support, as well as percentages of his earned income over a fixed amount. In an order dated January 11, 2013, the court modified the child and spousal support awards effective December 2012. When the parties were unable to agree on the amounts due under the judgment and subsequent modification, Maria filed a post-judgment request for an award of support arrears, as well as an award of attorney fees. On April 15, 2013 the trial court appointed retired Los Angeles Superior Court Judge Richard Montes as a referee pursuant to Code of Civil Procedure section 639, subdivision (a)(2).[2] Judge Montes was charged with determining the amount of support arrears due, if any, and, if appropriate, recommending an award of attorney fees in connection with the effort to establish and collect arrears.

On June 5, 2013 Brian filed a form entitled "Request for Disqualification of ADR Neutral," stating his belief Judge Montes was biased against him and would not be impartial. On June 11, 2013 the court issued a minute order "clarify[ing] its prior appointment order . . . with the specificity required under [section] 639."

A hearing was convened by Judge Montes on July 19, 2013. Maria was represented by counsel; Brian was not. At the beginning of the hearing Judge Montes

---

[1] As is customary in family law matters, we refer to the parties by their first names for convenience and clarity.

[2] Statutory references are to this code.

acknowledged the court had not complied with the provisions of section 640 in appointing him as referee. Judge Montes offered to send the referral back to the court if either side objected to proceeding. However, if the parties were willing to waive the defect in procedure, he would proceed. Both parties agreed to waive the defect in the appointment. Judge Montes prepared a written "Stipulation to Waive Objections," and both parties signed the stipulation. Maria testified and introduced an income and expense statement. Brian testified and also called Maria's counsel as a witness, questioning him at length about actions preceding entry of the judgment. Brian also provided a report from an accountant that tallied his income and expenses related to child and spousal support, reaching a lesser amount than calculated by Maria.[3] After the hearing closed, Judge Montes invited the parties to submit proposed findings of fact in support of their respective positions.

Judge Montes filed a report with the trial court on August 7, 2013. According to Judge Montes, Brian's questioning of Maria's counsel revealed a fundamental misunderstanding of the scope of the issues to be resolved and focused instead on whether there had been some kind of fraud in the inducement of the stipulated judgment. Brian's evidence—in particular the accountant's report of Brian's income and expenses—was based on incorrect assumptions and mischaracterizations of controlling court orders. Other exhibits provided by Brian contained extensive highlighting and commentary characterizing and disputing statements within the exhibits. Further, the post-hearing pleading filed by Brian was submitted in the form of "lengthy argument," which, the referee found, was confusing and unfocused, even allowing "some leeway" due to his self-represented status.

Judge Montes recommended the trial court find the amount of child and spousal support arrearages owed by Brian to Maria was $67,977.92; attorney fees in the amount

---

[3]     Brian failed to provide a transcript of the hearing even though a court reporter was present. Excerpts from the transcript were attached to a subsequent pleading filed by Brian with the trial court, but the discussion related to the proffered accountant's report was not complete.

3

of $23,224.27 had been incurred in the effort to establish and collect arrears, 75 percent of which should be paid by Brian due to his obstreperous conduct; and the amount of $33,020.72 of the retained escrow funds should be awarded to Maria with credit to Brian for half of that amount. Judge Montes also recommended Brian bear the costs of the court reporter because "the intransigence of the Petitioner and his lack of self-control" made it necessary to have the proceeding reported. Judge Montes closed by observing, "It is understandable that there can be a certain emotional upset when one is going through a divorce. However, after five years there is no excuse for the manner in which Petitioner continues to behave in regard to these proceedings."

Maria filed a request the court adopt all of the referee's suggested rulings. Brian opposed and filed several documents purporting to request the referee's recommendations be rejected and his own accountant's calculation be adopted. After a hearing on the matter the court issued a ruling adopting the referee's proposed rulings with the exception of the recommendation Brian pay the entire fee of the court reporter, which the court allocated equally between the parties. As to Brian's purported request for an order, the court found he had failed to pay the necessary filing fees and his requests were therefore not properly before the court.

## DISCUSSION

1. *Governing Law*

"In family law matters, especially where the parties are unable to curb their animosity toward each other, the trial court may well find it advantageous to designate a separate forum to resolve the parties' differences." (*Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1207; accord, *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5, fn. 2 and 8.) Although the court may not entirely delegate its judicial power (Cal. Const., art. VI, § 1), it has the statutory authority to send a pending action or proceeding, or some issue raised therein, to a referee or special master "for hearing, determination and report back to the court." (*Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1521; see §§ 638, 639.)

4

There are two types of references. A "general" reference, conducted under section 638, empowers a special master to make a conclusive determination without further action by the court. To comport with the constitutional prohibition against delegation of judicial power, a general reference requires the consent of the parties. (§ 638; *Ruisi v. Thieriot, supra,* 53 Cal.App.4th at p. 1208.) "[I]f the reference is by agreement of the parties, the parties can stipulate to the [referee] making determinations which otherwise would be an unlawful delegation of judicial authority." (*In re Marriage of Olson, supra,* 14 Cal.App.4th at p. 8.)

A "special" reference under section 639 may be ordered by the court without the parties' consent.[4] (*Jovine v. FHP, Inc., supra,* 64 Cal.App.4th at p. 1522.) In such cases the authority of the referee is limited to resolving specific questions of fact.[5] "The procedure is most commonly employed where complicated accounts can more conveniently be examined or taken outside of court, and to resolve discovery disputes or certain types of family law issues." (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 176.) These findings are advisory recommendations only and are not binding unless the court adopts them. (*Ruisi v. Thieriot, supra,* 53 Cal.App.4th at p. 1208; *Marriage of Petropolis,* at p. 176.) Nevertheless, although a referee's findings on factual questions are

---

[4] If a referee is appointed by a trial court pursuant to section 639, any party may object to the referee's report within 10 days or within any time as the court directs. (§ 643, subd. (c).) The appointment of a referee is subject to review under an abuse of discretion standard. (*Reed v. Reed* (1953) 118 Cal.App.2d 399, 400.)

[5] The trial court may direct a special reference under section 639 only in the following cases: "(1) When the trial of an issue of fact requires the examination of a long account on either side; in which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein. [¶] (2) When the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect. [¶] (3) When a question of fact, other than upon the pleadings, arises upon motion or otherwise, in any stage of the action. [¶] (4) When it is necessary for the information of the court in a special proceeding. [¶] (5) When the court in any pending action determines that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon." (§ 639, subd. (a).)

not binding, they are entitled to great weight when supported by substantial evidence. (See *In re Johnson* (1998) 18 Cal.4th 447, 461 ["[d]eference to the referee is called for on factual questions, especially those requiring resolution of testimonial conflicts and assessment of witnesses' credibility, as the referee has the opportunity to observe the witnesses' demeanor and manner of testifying"].) "The court may adopt the referee's recommendations, in whole or in part after independently considering the referee's findings and any objections and response thereto filed with the court." (§ 644, subd. (b); see *Marathon Nat. Bank v. Superior Court* (1993) 19 Cal.App.4th 1256, 1261.) If substantial evidence supports the referee's recommendations, there is no abuse of discretion by the trial court.

2. *Brian Waived His Objections to the Appointment by Stipulation*

Brian contends the trial court's appointment of Judge Montes as a referee was improper. Brian filed a request to disqualify Judge Montes shortly after his appointment by the court, but his request was improperly framed as a challenge to an alternative dispute mediator. The court corrected that misimpression by issuing an order clarifying its appointment had been made pursuant to section 639. Brian did not file an objection to that order.

While there seems to be no dispute the trial court did not comply with section 640, subdivision (b), which allows the parties to participate in the selection of the referee,[6] Brian waived any objection to this procedural defect when he agreed to proceed with Judge Montes because, in his words, "time is of the essence." The stipulation prepared by Judge Montes and executed by Brian provides: "In this matter, a failure to comply with the provisions of Sections 639 and 640 of the Code of Civil Procedure may exist in connection with the order assigning Judge Richard Montes (Retired) to act as a Referee in this matter. [¶] Nonetheless, the parties waive any objection to the appointment of Judge

---

[6]     Section 640, subdivision (b), provides: "If the parties do not agree on the selection of the referee or referees, each party shall submit to the court up to three nominees for appointment as referee and the court shall appoint one or more referees, not exceeding three, from among the nominees against whom there is no legal objection. . . ."

Montes to act as a Referee pursuant to [section] 639." Brian offers, and there appears to be, no ground for finding this waiver invalid. Accordingly, the failure to comply with the selection procedure contemplated by sections 639 and 640 is not grounds for reversal of the trial court's order.

Brian also contends Judge Montes was prejudiced against him personally and demonstrated unethical, anti-Semitic bias when he used the term "kosher"—a word borrowed from Yiddish and Hebrew describing food that has been prepared in keeping with the dietary constraints of traditional Jewish law but commonly used as a colloquial term for "being proper, acceptable or satisfactory" (Merriam-Webster OnLine Dict. <http://www.merriam-webster.com/dictionary/kosher> [as of June 16, 2015])—in addressing Brian's belief the proceedings were illegitimate.[7] While "kosher" in this context may be slang, it is no stranger to judicial proceedings. (See, e.g., *United States v. Morales* (2d Cir. 1978) 577 F.2d 769, 776, fn. 8 [quoting defense counsel's closing argument, "'Suppos[e] there was something illegal in the bag, supposing there was something in the vernacular, not kosher or right; what happens if it would have been marijuana . . . .'"]; *United States v. Orgad* (E.D.N.Y. 2001) 132 F.Supp.2d 107, 119 [quoting from tape recording of informant and suspect, "You know, I just was calling uh, another lawyer to make sure, you know that this all was kosher"].) We see no way in which Judge Montes's use of the widely accepted and understood word indicated any bias toward Jews generally or Brian specifically.

3. *The Trial Court Did Not Abuse Its Discretion in Adopting the Findings of the Referee*

The California Rules of Court require appellants to identify points of law and error, to support them by argument and, if possible, citation of authority and to provide specific references to the record in support of those arguments. (Cal. Rules of Court, rule

---

[7] Explaining his focus on what the stipulated court order meant, not the contentious negotiations that preceded it, Judge Montes said to Brian, "I'm just trying to determine what is relevant. There are a [lot] of things that you may find that are not copacetic. In the old days, I used to say kosher but—because in Beverly Hills that's acceptable." Brian replied, "I do not laugh."

7

8.204(a)(1)(B)-(C).) Absent compliance with these rules, we have little basis to question the trial court's exercise of its broad discretion in a particular matter. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [cardinal rule of appellate review that judgment or order of trial court is presumed correct and prejudicial error must be shown]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 [appellant must provide an adequate appellate record demonstrating error]; *Lincoln Fountain Villas Homeowners Assn. v. State Farm Fire & Casualty Ins. Co.* (2006) 136 Cal.App.4th 999, 1003-1004, fn. 1 [record is inadequate when it "'appears to show *any* need for *speculation or inference* in determining whether error occurred'"].) If an inadequate record has been provided, we must affirm the judgment. (*Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1 [burden is on appellants to provide adequate record on appeal to demonstrate error; failure to do so precludes an adequate review and results in affirmance of the trial court's determination].)

While we acknowledge a self-represented litigant's understanding of the rules on appeal is, as a practical matter, more limited than an experienced appellate attorney's and, whenever possible, we do not strictly apply technical rules of procedure in a manner that deprives litigants of a hearing, Brian's failure to comply with these principles in this appeal has severely hindered our ability to decipher and address his claims. As best we can understand Brian's arguments in the context of the limited scope of this appeal,[8] he contends the trial court abused its discretion in adopting Judge Montes's recommendations, which improperly failed to credit him for the child care contribution owed by Maria for the expenses associated with the couple's daughter, of whom Brian held principal custody. Brian, however, has misinterpreted the trial court's modification of the April 2012 stipulated judgment in its January 11, 2013 order. To be sure, the order

---

[8] Most of Brian's arguments appear to be directed at the amount of spousal support awarded by the trial court in earlier proceedings and its application of certain family law principles in making those awards. Those orders are not before us. This appeal is limited to the order entered on December 26, 2013 adopting Judge Montes's recommendations concerning support arrearages and attorney fees.

states that Maria shall pay Brian $330 per month in child support plus a child care contribution of $600 per month commencing December 1, 2012. It also provides that Brian shall pay Maria spousal support of $1,754 per month commencing December 1, 2012. The order then set forth a modified "Net Support Payment" providing, "To simplify the payment of child and spousal support, to or from either party, Petitioner [Brian] shall pay to Respondent [Maria] the net amount of $824 per month . . . commencing on December 1, 2012." The sum of $824 equals the spousal support amount of $1,754 owed by Brian, less the $930 combined child support and child care contribution ($330 and $600) owed by Maria. Judge Montes expressly acknowledged this combined net payment in the recommendations submitted to the court: "[Brian] refers to items of unpaid child care arrearages but makes no reference to any document that is being proffered to determine such an item. Nor was any exhibit offered during the hearing that deals with this issue. . . . The judgment of April 6, 2012 does not mention child care expenses. The amended order of January 11, 2013 orders [Maria] to pay child care expenses of $600 per month and child support of $300 [*sic*] per month commencing on December 1, 2012. The January 11, 2013 [order] excluded child support and child care was eliminated as of December 1, 2012 and substituted with a net spousal support order of $824 per month." In other words, Brian was credited with Maria's obligation to contribute to their daughter's child care, and Brian's claim of error is mistaken.

We have considered Brian's other points to the extent we are able to understand them. With regard to the narrow issues before the referee and, subsequently, the court, we perceive no basis for Brian's contention the findings of the referee were not supported by substantial evidence or the trial court abused its discretion in adopting those recommendations.

9

## DISPOSITION

The judgment is affirmed.  Maria is to recover her costs on appeal.

PERLUSS, P. J.

We concur:

ZELON, J.

IWASAKI, J.[*]

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10